**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY and STATE FARM COUNTY MUTUAL INSURANCE COMPANY OF TEXAS, | ) ) ) ) ) | |
| Plaintiffs, | ) | |
| v. | ) ) | Case No. Case No. 4:19-cv-01491 |
| NOORUDDIN S. PUNJWANI, M.D.; PAIN ALLEVIATION & INTERVENTIONAL NEEDS, LLC N/K/A PAIN ALLEVIATION & INTERVENTIONAL NEEDS, PLLC; BARKETALI M. ROOPANI; ANIL B. ROOPANI; and SOHAIL B. ROOPANI, | ) ) ) ) ) ) ) | |
| Defendants. | ) ) | |

**DEFENDANT NOORUDDIN S. PUNJWANI, M.D.'S REPLY IN SUPPORT OF HIS MOTION TO DISMISS PLAINTIFFS' ORIGINAL COMPLAINT**

## I.   INTRODUCTION

Notwithstanding the fact that in every single instance, State Farm had the opportunity to investigate and challenge the medical bills and records reflecting the treatment by Dr. Punjwani that State Farm now lambasts as unwarranted on their face, the extravagant racketeering scheme State Farm posits simply does not make sense on the facts State Farm itself pleads.

As State Farm acknowledges, Dr. Punjwani is only an employee of P.A.I.N, not an owner or manager. *See* Compl. ¶¶ 19, 72. As State Farm acknowledges, Dr. Punjwani is paid a flat fee for each examination and injection he conducts or administers. Compl. ¶ 18. And Dr. Punjwani is paid that flat fee by *his employer P.A.I.N.*, not by plaintiff personal injury attorneys, not by those attorneys' clients, and not by State Farm. *See id*. ¶¶ 18, 19, 72. State Farm alleges no facts (nor can it) suggesting that Dr. Punjwani has *any interest*, financial or otherwise, in whether the

insurance claims submitted by the patients he sees are paid or denied, or even whether P.A.I.N. itself was ever paid for Dr. Punjwani's work. *See, e.g.,* Compl. Dr. Punjwani's compensation is the same even if P.A.I.N.'s bills to his patients go unpaid, or State Farm and other insurance companies reject his patients' *Stowers* demands. Additionally, State Farm alleges no facts (nor can it) suggesting that Dr. Punjwani has any authority or even input over the amounts P.A.I.N. chooses to bill for his services—or anything else related to P.A.I.N.'s billing practices. Dr. Punjwani is simply an employee-provider.

This is where State Farm's story falls apart. With no stake whatsoever in State Farm's decisions whether to pay his patients' litigation demands, Dr. Punjwani cannot have intended to defraud State Farm. Even if State Farm's litany of after-the-fact complaints about Dr. Punjwani's treatment decisions and records were true, State Farm still fails to plead facts indicating Dr. Punjwani's participation in a RICO enterprise, and fails to explain how Dr. Punjwani could have had and received money State Farm paid on judgments and settlements to personal injury victims—not their doctors. State Farm's Complaint against Dr. Punjwani should be dismissed for failure to state a claim upon which relief can be granted.

## II. ARGUMENT

### A.    This Court Should Dismiss State Farm's RICO Claim.

#### (i)    Insufficient allegation of fraudulent intent.

State Farm fails to allege fraudulent intent by Dr. Punjwani. State Farm fails to make the very "factual allegations that adequately demonstrate defendant had motive and opportunity to commit the fraud and create a reasonable inference" of the requisite intent State Farm admits it must. Resp. at 21. State Farm itself admits that P.A.I.N. pays Dr. Punjwani a fixed fee for each examination and injection he conducts or administers. Compl. ¶ 18. That fee is thus independent

of the outcome of any personal injury plaintiff-patient's demand on State Farm or other insurance companies. That fee is even independent of whether P.A.I.N.'s bills get paid. And Dr. Punjwani, merely an employee, not an owner or a manager, has no internet or control over P.A.I.N. billing practices, its rates, or P.A.I.N.'s ultimate success. *See id*. ¶¶ 18, 19, 72.

State Farm alleges no facts showing *any interest*, financial or otherwise, by Dr. Punjwani in whether the insurance claims submitted by his patients are paid or denied, or even whether P.A.I.N. itself is paid for his work. Dr. Punjwani's compensation is the same even if P.A.I.N.'s bills to his patients go unpaid, or State Farm and other insurance companies reject his patients' *Stowers* demands. Accordingly, State Farm fails to allege any factual indicia of any coherent motive by Dr. Punjwani to defraud State Farm—facts which exist in the cases State Farm cites in its favor. *Compare Liberty Mut. Ins. Co. v. Excel Imaging, P.C.*, 879 F. Supp. 2d 243, 276 (E.D.N.Y. 2012) ("The Management Defendants entered into an agreement to share the no-fault benefits earned by Excel with the Nominal Owner Defendants"); *Allstate Ins. Co. v. Lyons*, 843 F. Supp. 2d 358, 373 (E.D.N.Y. 2012) ("According to the Complaint, defendants gained millions of dollars through their alleged fraud; surely this constitutes motive."). Here, Dr. Punjwani's compensation from P.A.I.N. was completely independent of any action by State Farm. State Farm's RICO claim should be dismissed.

        **(ii)**      **Insufficient allegation of operation and management of the RICO enterprise.**

In order to state a valid RICO claim under section 1962(c), State Farm must allege facts capable establishing that Dr. Punjwani engaged in a pattern of racketeering activity connected to the "acquisition, establishment, conduct, or control of an enterprise." *St. Germain v. Howard*, 556 F.3d 261, 263 (5th Cir. 2009). State Farm states in its Response that "P.A.I.N. is a 'legal entity' enterprise and Dr. Punjwani is the sole RICO 'person' who played the integral role in developing

and carrying out the fraud scheme." Resp. at 25. But State Farm must plead facts establishing that Dr. Punjwani "participat[ed] in the operation or management of the enterprise itself"—"*some* part in directing the enterprise's affairs is required." *Reves v. Ernst & Young*, 507 U.S. 170, 179 (1993) (emphasis in original).

The Fifth Circuit has subsequently made clear that a defendant must have some supervisory involvement in an enterprise in order to satisfy section 1962(c)'s conduct or participate requirement. *Allstate Ins. Co. v. Plambeck*, 802 F.3d 665, 675 (5th Cir. 2015) (acknowledging that defendants had limited roles but that they "participated in managing the enterprise with their supervisory roles in their respective parts of the scheme."). Thus, simply providing goods or services that ultimately benefit the enterprise will not subject one to liability. *Allstate Ins. Co. v. Benhamou*, 190 F. Supp. 3d 631, 655 (S.D. Tex. 2016). *See also In re MasterCard Intern. Inc., Internet Gambling Litig.*, 132 F. Supp. 2d 468, 489 (E.D. La. 2001), *aff'd sub nom. In re MasterCard Intern. Inc.*, 313 F.3d 257 (5th Cir. 2002) (collecting cases); *Amsterdam Tobacco Inc. v. Philip Morris Inc.*, 107 F. Supp. 2d 210, 218 (S.D.N.Y. 2000) ("Providing important services to a racketeering enterprise is not the same as directing the affairs of an enterprise.").

Nor will merely having a business relationship with a RICO enterprise or simply contributing to the enterprise "with the knowledge of or willful disregard" for the other defendants' supposed fraudulent activity. *See Compass Bank v. Villarreal*, No. 10–8, 2011 WL 1740270, at *13 (S.D. Tex. May 5, 2011) ("Having a business relationship with a RICO enterprise does not constitute operation and management of the enterprise's affairs necessary for RICO liability" and collecting cases); *Gonzalez v. Bank of Am.*, CV H-09-2946, 2011 WL 13261985, at *7 (S.D. Tex. Feb. 20, 2011), *aff'd as modified sub nom. Gonzalez v. Bank of Am. Ins. Services, Inc.*, 454 F. App'x 295 (5th Cir. 2011) ("Participation means direction, in some part, [of] an enterprise's

affairs."). Even the receipt of funds on its own—like Dr. Punjwani's collection of flat fees from P.A.I.N.—without more, will not establish that a defendant actually operated a scheme to obtain those funds. *Davis–Lynch, Inc. v. Moreno*, 667 F.3d 539, 551 (5th Cir. 2012).

As discussed above, State Farm specifically admits that Dr. Punjwani is only an employee of P.A.I.N, not an owner or manager. *See* Compl. ¶¶ 18, 19, 72. State Farm alleges no facts whatsoever showing that Dr. Punjwani has any managerial or supervisory role at P.A.I.N. As State Farm acknowledges, Dr. Punjwani is paid a flat fee for each examination and injection. Compl. ¶ 18. State Farm pleads no facts showing that Dr. Punjwani has *any interest*, financial or otherwise, in whether the insurance claims submitted the patients he sees are paid or denied, or even whether P.A.I.N. itself was ever paid for Dr. Punjwani's work. *See, e.g.,* Compl. State Farm pleads no facts showing that Dr. Punjwani had any communication with the plaintiffs' lawyers making demands upon State Farm, or State Farm itself, much less any facts showing direction or supervision of P.A.I.N.'s billing activities—P.A.I.N. merely billed for Dr. Punjwani's work. *See, e.g.,* Compl. State Farm pleads no facts showing that Dr. Punjwani was aware of or participated in the use of the mail to deliver settlement packages to State Farm or received settlement checks by anyone. State Farm's RICO claim fails.

**B.  This Court Should Dismiss State Farm's Money Had and Received Claim because Dr. Punjwani Holds No Money Which in Equity and Good Conscience Belongs to State Farm.**

State Farm does not dispute that a claim for money had and received requires that the "defendant holds money which in equity and good conscience belongs to [the plaintiffs]." *Bank of Saipan v. CNG Fin. Corp.*, 380 F.3d 836, 840 (5th Cir. 2004). *See* Resp. at 25. As State Farm's own Complaint makes clear, Dr. Punjwani's flat-fee compensation for his treatment—no matter how harshly State Farm now indicts it—has nothing to do with State Farm. He was paid by

P.A.I.N., in whom he has no financial interest. His payment by P.A.I.N. was independent of the status (or content) of P.A.I.N.'s bills. And his compensation was thus completely independent of whether his patients' personal injury attorneys ever successfully made claims or obtained judgments against State Farm or other insurers. In short, Dr. Punjwani has not, and has never, held money which in good conscience belongs to State Farm. This claim should be dismissed.

### III.  CONCLUSION

For the reasons stated above and in his original motion, Dr. Punjwani is entitled to dismissal on the grounds that State Farm has (1) failed to state a claim upon which relief may be granted under 18 U.S.C. § 1962(c), and (2) failed to state a claim upon which relief may be granted for money had and received under Texas law.  Accordingly, Dr. Punjwani should be dismissed from this matter pursuant to Federal Rule of Civil Procedure 12(b)(6) and 9(b).

Respectfully submitted,

**AHMAD, ZAVITSANOS, ANAIPAKOS, ALAVI & MENSING P.C.**

*/s/ Sammy Ford IV*
Todd W. Mensing
State Bar No. 24013156
Federal Bar No. 302944
tmensing@azalaw.com
Sammy Ford IV
Texas Bar No. 24061331
Federal Bar No. 950682
sford@azalaw.com
Monica Uddin
Texas Bar No. 24075195
Federal Bar No. 1138459
muddin@azalaw.com
1221 McKinney, Suite 2500
Houston, Texas 77010
(713) 600-4979 (Phone)
(713) 655-0062 (Fax)

**ATTORNEYS FOR DEFENDANT NOORUDDIN S. PUNJWANI, M.D.**

6

## <u>CERTIFICATE OF SERVICE</u>

     I hereby certify that on August 16th, 2019, the above and foregoing was electronically filed with the Clerk of the Court using CM/ECF system, which sent notice of electronic filing to all counsel of record.

*/s/ Sammy Ford IV*  
Sammy Ford IV
