IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY and STATE FARM COUNTY MUTUAL INSURANCE COMPANY OF TEXAS, | § § § § § | |
| Plaintiffs, | § § | |
| v. | § § | CIVIL ACTION NO. H-19-1491 |
| NOORUDDIN S. PUNJWANI, M.D., PAIN ALLEVIATION & INTERVENTIONAL NEEDS, PLLC, BARKETALI M. ROOPANI, ANIL B. ROOPANI, and SOHAIL B. ROOPANI, | § § § § § § | |
| Defendants. | § | |

MEMORANDUM AND ORDER

Pending is Defendant Nooruddin S. Punjwani's Motion to Dismiss (Document No. 14) and Defendants Pain Alleviation & Interventional Needs, PLLC, Barketali M. Roopani, Anil B. Roopani, and Sohail B. Roopani's Motion to Dismiss (Document No. 15). After carefully considering the motions, response, replies, and applicable law, the Court concludes for the reasons that follow that both motions should be denied.

I. Background

Plaintiffs State Farm Mutual Automobile Insurance Company and State Farm County Mutual Insurance Company of Texas (collectively "State Farm") allege that Defendants Nooruddin S. Punjwani, M.D.

("Dr. Punjwani") and Pain Alleviation & Interventional Needs, PLLC ("PAIN") engaged in a fraudulent scheme involving medically unnecessary treatment of motor accident victims. State Farm alleges it paid hundreds of allegedly fraudulent claims for medical services, including unnecessary medical evaluations, spinal injections, and related procedures, performed at PAIN locations by Dr. Punjwani on accident victims who submitted claims for insurance benefits under State Farm policies.[1] PAIN was formed as a Texas limited liability company in July 2015, and its sole members from formation through about June 2018 were Defendants Barketali Roopani and his sons, Anil B. Roopani and Sohail B. Roopani (collectively, "the Roopanis").[2] Dr. Punjwani has performed evaluations and injections at PAIN since its formation, and he is paid a fixed fee for every evaluation and injection he performs.[3]

According to State Farm, Dr. Punjwani and PAIN prepared fraudulent examination reports, MRI interpretive reports, and operative reports that purported to show that accident victims suffered serious injuries requiring the need for invasive

---

[1] Document No. 1 ¶ 1 (Compl.).

[2] Id. ¶ 19. Currently, another son of Barketali Roopani, Rahil B. Roopani, M.D., is the sole member of PAIN, which after reorganization is now a PLLC. Rahil Roopani is not a party to this suit.

[3] Id. ¶ 18.

2

treatment.[4] Dr. Punjwani allegedly performed the same cursory examination on each accident victim and prescribed an allegedly medically unnecessary series of three interlaminar epidural steroid injections ("ESIs") for virtually all patients with neck and/or back pain.[5] State Farm alleges that the serial ESIs were performed to inflate the potential value of the accident victims' insurance claims.[6] Dr. Punjwani billed for fluoroscopic guidance along with the ESIs, allegedly inflating the cost of the procedures, but there are no records or films of actual fluoroscopies, which is contrary to basic medical standards.[7]

As part of the diagnostic process, Dr. Punjwani interpreted MRI films and allegedly made an identical positive spinal injury diagnosis for each of the hundreds of accident victims.[8] He then used these findings as justification for the medically unnecessary invasive ESIs.[9] State Farm alleges that the boilerplate operative reports for the ESIs show that Dr. Punjwani made the same

---

[4] Id. ¶ 8.

[5] Id. ¶ 29. State Farm alleges that a routine series of three ESIs is never medically indicated, according to guidelines published by various medical organizations, because patients should be assessed after each ESI to determine if an additional injection is needed. Id. ¶ 30.

[6] Id. ¶ 3.

[7] Id. ¶ 60.

[8] Id. ¶¶ 3, 51.

[9] Id. ¶ 3.

3

predetermined, non-specific diagnosis of each patient who received ESIs.[10]

State Farm alleges that at least as early as August 2015, Dr. Punjwani and PAIN began to enrich themselves through the victims' insurance claims made to State Farm.[11] Dr. Punjwani and PAIN created the bills for the allegedly unnecessary services and sent them to personal injury attorneys who then included the bills in demand packages for claims.[12] This scheme involved both (i) bodily injury claims made by accident victims who were not substantially at fault to the insurance companies of the at-fault drivers and (ii) underinsured/uninsured motorist claims made by accident victims to their own insurance companies if they were unable fully to recover from the at-fault drivers' insurance companies.[13] State Farm alleges that Dr. Punjwani and PAIN's scheme was designed to induce State Farm to rely on the fraudulent bills and reports from Dr. Punjwani and PAIN to settle the bodily injury and underinsured/uninsured motorist claims with higher than warranted settlement offers.[14] The scheme was employed with knowledge that Texas insurance law subjects insurers to substantial liability for

---

[10] Id. ¶¶ 58-59.

[11] Id. ¶¶ 7, 11.

[12] Id. ¶ 8; id., ex. 5.

[13] Document No. 1 ¶ 4.

[14] Id. ¶ 9.

failing to accept reasonable settlement demands within policy limits on bodily injury claims or for not acting in good faith to provide a settlement when liability is reasonably clear.[15] As a result of the scheme, State Farm seeks damages of more than $3 million from Defendants for settlements of bodily injury claims and underinsured/uninsured motorist claims paid as a result of fraudulent treatments of the claimants by Dr. Punjwani and PAIN.[16]

State Farm alleges against Dr. Punjwani a claim under the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1961 *et. seq.*, and alleges against all Defendants a claim for money had and received. Defendants move to dismiss State Farm's claims under Rule 12(b)(6) for failure to state a claim.[17]

II. <u>Legal Standard</u>

Rule 12(b)(6) provides for dismissal of an action for "failure to state a claim upon which relief can be granted." FED. R. CIV. P. 12(b)(6). When a district court reviews the sufficiency of a

---

[15] <u>Id.</u> ¶ 5-6. See <u>G. A. Stowers Furniture Co. v. Am. Indem. Co.</u>, 15 S.W.2d 544, 548 (Tex. Comm'n App. 1929, holding approved) (holding that insurance companies have a duty to accept reasonable offers to settle within policy limits); TEX. INS. CODE § 541.060(a)(2)(A) ("It is an . . . unfair or deceptive act or practice in the business of insurance to . . . fail[] to attempt in good faith to effectuate a prompt, fair, and equitable settlement of a claim with respect to which the insurer's liability has become reasonably clear.").

[16] Document No. 1 ¶ 10.

[17] Document Nos. 14, 15.

complaint before it receives any evidence either by affidavit or admission, its task is inevitably a limited one. *See* Scheuer v. Rhodes, 94 S. Ct. 1683, 1686 (1974), *abrogated on other grounds by* Harlow v. Fitzgerald, 102 S. Ct. 2727 (1982). The issue is not whether the plaintiff ultimately will prevail, but whether the plaintiff is entitled to offer evidence to support the claims. Id.

In considering a motion to dismiss under Rule 12(b)(6), the district court must construe the allegations in the complaint favorably to the pleader and must accept as true all well-pleaded facts in the complaint. *See* Lowrey v. Tex. A&M Univ. Sys., 117 F.3d 242, 247 (5th Cir. 1997). To survive dismissal, a complaint must plead "enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 127 S. Ct. 1955, 1974 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009). While a complaint "does not need detailed factual allegations . . . [the] allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." Twombly, 127 S. Ct. at 1964-65.

III. Discussion

A. RICO

"Claims under RICO, 18 U.S.C. § 1962, have three common elements: '(1) a person who engages in (2) a pattern of racketeering activity, (3) connected to the acquisition, establishment, conduct, or control of an enterprise.'" St. Germain v. Howard, 556 F.3d 261, 263 (5th Cir. 2009) (quoting Abraham v. Singh, 480 F.3d 351, 355 (5th Cir. 2007)). "A pattern of racketeering activity consists of two or more predicate criminal acts that are (1) related and (2) amount to or pose a threat of continued criminal activity." Snow Ingredients, Inc. v. SnoWizard, Inc., 833 F.3d 512, 524 (5th Cir. 2016) (quoting St. Germain, 556 F.3d at 263). Dr. Punjwani argues that Plaintiff failed to plead its RICO claim with particularity as required by Rule 9(b); "failed to plead any one RICO predicate act, let alone a pattern of racketeering activity"; and failed to allege any "enterprise."[18]

1. State Farm's Complaint meets the Rule 9(b) pleading standard.

Title 18, United States Code Section 1961(1) lists a number of predicate criminal acts, including wire fraud and mail fraud. RICO claims based on predicate acts of fraud are subject to the

---

[18] Document No. 14 at 7, 9.

heightened pleading requirements of Rule 9(b). <u>Tel-Phonic Servs., Inc. v. TBS Int'l, Inc.</u>, 975 F.2d 1134, 1138-39 (5th Cir. 1992). Under Rule 9(b), parties "must state with particularity the circumstances constituting fraud or mistake." FED. R. CIV. P. 9(b). To meet this standard, Plaintiff should "specify the statements contended to be fraudulent, identify the speaker, state when and where the statements were made, and explain why the statements were fraudulent." <u>Sullivan v. Leor Energy, LLC</u>, 600 F.3d 542, 551 (5th Cir. 2010) (quoting <u>ABC Arbitrage v. Tchuruk</u>, 291 F.3d 336, 350 (5th Cir. 2002)).

Dr. Punjwani argues that State Farm generally fails to allege any fraudulent activity because State Farm does not identify a single patient of PAIN who did not receive the treatment for which payment was sought and provides no factual basis for its contention that the services provided by Dr. Punjwani were unnecessary. However, State Farm's principal allegation is not that patients did not receive the treatment they sought from Dr. Punjwani and PAIN but rather that Dr. Punjwani and PAIN conducted illegitimate evaluations and made predetermined recommendations for medically unnecessary ESIs. State Farms's Complaint describes this scheme at length and provides detailed appendices that identify and illustrate the alleged fraudulent scheme, including initial exam reports, MRI reports, operative reports, and demand packages

containing settlement information for the claims at issue.[19] State Farm's detailed allegations and appendices provide ample notice of the specifics of Dr. Punjwani's allegedly fraudulent conduct and are sufficiently particularized to satisfy Rule 9(b). *See* <u>Allstate Ins. Co. v. Benhamou</u>, 190 F. Supp. 3d 631, 659-60 (S.D. Tex. 2016) (Harmon, J.) (concluding that detailed allegations of unnecessary treatment and inflated services leading to higher insurance claims "make the predicate acts alleged by Plaintiff plausible") (quoting <u>Adhikari v. Daoud & Partners</u>, 697 F. Supp. 2d 674, 693 (S.D. Tex. 2009) (Ellison, J.)).

2.  <u>State Farm sufficiently pleads predicate acts under RICO.</u>

State Farm alleges that Dr. Punjwani's actions in the fraudulent scheme led to repeated violations of the federal mail fraud statute, 18 U.S.C. § 1341, one of the predicate acts that may support a RICO violation.[20] Mail fraud requires "(1) a scheme to defraud; (2) the use of the mails to execute the scheme; and (3) the specific intent to defraud." <u>United States v. Traxler</u>, 764 F.3d 486, 488 (5th Cir. 2014). Dr. Punjwani allegedly submitted "fraudulent bills and supporting documentation for evaluations and injections which either were not performed, were not legitimately

---

[19] Document No. 1, exs. 1-33.

[20] <u>Id.</u> ¶ 73.

9

performed, or were not medically necessary, which in turn caused settlement checks to be deposited in the U.S. mails by [State Farm] and delivered on or about the dates reflected on Ex. 4."[21]

Dr. Punjwani argues that State Farm's pleadings do not state predicate acts of mail fraud because State Farm makes no factual allegations that Dr. Punjwani himself fraudulently used the mail. However, to state a claim for mail fraud, "the defendant need not personally effect the mailing. It is sufficient that the defendant . . . 'act with knowledge that the use of the mails will follow in the ordinary course of business.'" Traxler, 764 F.3d at 488 (quoting Pereira v. United States, 74 S. Ct. 358, 363 (1954)); see also Schmuck v. United States, 109 S. Ct. 1443, 1447 (1989) (requiring only that "the use of the mails is a part of the execution of the fraud") (citation omitted). State Farm's allegations that it used the mail to pay for the alleged fraudulent claims for unnecessary treatment, as anticipated by Punjwani, adequately allege fraudulent use of the mail.

Dr. Punjwani additionally argues that State Farm's pleadings fail to allege with any specificity that Dr. Punjwani acted with the specific intent to deceive, the third element of the predicate act of mail fraud. See United States v. Plato, 593 F. App'x 364, 369 (5th Cir. 2015) ("This court additionally recognizes a specific-intent requirement that the defendant . . . 'acts

---

[21] Id. ¶ 73, id., ex. 4.

knowingly with the specific intent to deceive for the purpose of causing pecuniary loss to another or bringing about some financial gain to himself.'") (quoting United States v. Akpan, 407 F.3d 360, 370 (5th Cir. 2005)). However, in Plato, the Fifth Circuit found that the misrepresentations for which the defendant was responsible were "ample evidence for a reasonable jury to find . . . [defendant's] specific intent to defraud." Id. at 371. Fraudulent intent similarly can be plausibly inferred from State Farm's Complaint and attached appendices that highlight the pattern of numerous cases in which Dr. Punjwani and PAIN allegedly provided fraudulent diagnoses and medically unnecessary treatment. See Allstate Ins. Co. v. Plambeck, 802 F.3d 665, 675 (5th Cir. 2015) (finding that circumstantial evidence that defendants participated in a scheme to defraud insurance companies was enough to prove intent for mail fraud). State Farm has plausibly pled predicate acts of mail fraud that support its RICO violation claim.

3. State Farm sufficiently pleads that PAIN is an enterprise under RICO.

Dr. Punjwani argues that State Farm's RICO claim fails because PAIN is not an enterprise. To establish RICO liability, the plaintiff "must allege and prove the existence of two distinct entities: (1) a 'person'; and (2) an 'enterprise' that is not simply the same 'person' referred to by a different name." Benhamou, 190 F. Supp. 3d at 648. An enterprise "includes any

11

individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity." 18 U.S.C. § 1961(4). *See also* <u>Akin v. Q-L Invs., Inc.</u>, 959 F.2d 521, 533 (5th Cir. 1992) ("[A]n 'enterprise' can include a corporation or other legal entity."); <u>B. Choice Ltd. v. Epicentre Dev. Assocs. LLC</u>, No. H-14-2096, 2016 WL 3911123, at *14 (S.D. Tex. May 12, 2016) (Johnson, J.) ("An enterprise can be a formal organization that is itself a legal entity or an informal, nonlegal group known as an association-in-fact.").

State Farm adequately alleges that PAIN is an enterprise, as defined under § 1961(4), because of PAIN's status as a legal entity, which was initially organized and operated as a limited liability company and was later reorganized to be operated on an ongoing basis as a professional limited liability company.[22] *See* <u>B Choice Ltd.</u>, 2016 WL 3911123, at *14 (finding that "Plaintiff has properly alleged the existence of a RICO enterprise" when Plaintiff had alleged that the Defendant LLC was "an ongoing legal entity").

Dr. Punjwani also argues for the first time in his reply brief that State Farm has not alleged facts showing that Dr. Punjwani had any managerial or supervisory role at PAIN in order to satisfy the participation and conduct requirement of RICO. *See* 18 U.S.C. § 1962(c) ("It shall be unlawful for any person

---

[22] Document No. 1 ¶¶ 71, 73.

12

employed by or associated with any enterprise . . . to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs."). Regarding the element of participation, a "nexus between the defendant, the enterprise, and the racketeering activity" is required, which "establish[es] by proof that the defendant has in fact committed the racketeering acts alleged, that the defendant's association with the enterprise facilitated the commission of the acts, and that the acts had some effect on the enterprise." Akin, 959 F.2d at 533-34. The RICO statute requires that the defendant have "*some* part in directing the enterprise's affairs," but "RICO liability is not limited to those with primary responsibility for the enterprise's affairs." Reves v. Ernst & Young, 113 S. Ct. 1163, 1170 (1993). State Farm alleges that Dr. Punjwani, while working at PAIN, regularly initiated examinations and recommended and performed the medically unnecessary ESIs at the heart of the scheme. Because Dr. Punjwani was the sole individual making medically unnecessary treatment decisions central to the allegedly fraudulent scheme, the participation element has been pled sufficiently. Dr. Punjwani's motion to dismiss the RICO claim is denied.

B. <u>Money Had and Received</u>

All Defendants move to dismiss State Farm's claim for money had and received.[23] They argue that State Farm failed to identify fraudulent behavior that led to money received by Defendants; that even if Defendants received funds as result of fraudulent conduct, there is no liability because State Farm did not make any direct payments to Defendants; and that the chain of events alleged in the Complaint is too attenuated to create a plausible inference that any settlement money paid by State Farm for the claims at issue belongs in equity and good conscience to State Farm.

State Farm seeks to recover from Defendants the money that PAIN received from the allegedly fraudulent claims at issue.

> The question, in an action for money had and received, is to which party does the money, in equity, justice, and law, belong. All plaintiff need show is that defendant holds money which in equity and good conscience belongs to him. Again, it has been declared that a cause of action for money had and received is less restricted and fettered by technical rules and formalities than any other form of action. It aims at the abstract justice of the case, and looks solely at the inquiry, whether the defendant holds money, which belongs to the plaintiff.

<u>Bank of Saipan v. CNG Fin. Corp.</u>, 380 F.3d 836, 840 (5th Cir. 2004) (quoting <u>Staats v. Miller</u>, 243 S.W.2d 686, 687-88 (Tex. 1951)). State Farm alleges that it conferred a benefit upon Defendants by paying to personal injury claimants who sought treatment from

---

[23] Document Nos. 14, 15.

Dr. Punjwani and PAIN more that $13 million to settle their bodily injury and uninsured motorist claims.[24] State Farm further alleges that PAIN and Dr. Punjwani's fraudulent bills and supporting reports induced State Farm to settle bodily injury and underinsured/uninsured motorist claims that it may not have settled otherwise, and that it paid more to settle these claims than it would have if it had known that the bills were fraudulent and the treatments medically unnecessary.[25] PAIN allegedly received its payments for the claimants and their personal injury attorneys; Dr. Punjwani allegedly received his payments from PAIN for each examination and the multitude of ESIs he performed on claimants as part of the scheme; and the Roopanis, as PAIN's sole members, in turn allegedly received PAIN's profits from the fraud. Under similar circumstances, this Court has permitted insurance companies to recover money paid for fraudulent billing through money had and received claims. See DAC Surgical Partners v. United Healthcare Servs., Inc., No. 4:11-CV-1355, 2019 WL 3252343, at *5 (S.D. Tex. July 7, 2019) (citation omitted) ("The amount that United overpaid based on Par and Euston's fraudulent misrepresentations belongs to United 'in equity and good conscience.'"); Aetna Life Ins. Co. v. Won Yi, No. H-14-900, 2019 WL 2355543, at *2 (S.D. Tex. June 4, 2019) (concluding that insurance company met the requirements for

---

[24] Document No. 1 ¶ 78.

[25] Id.

15

a money had a received claim by showing that the defendants were paid money for dishonest claims). Therefore, State Farm has adequately pled fraudulent behavior that led to money received by Defendants.[26]

Defendants argue that State Farm did not make direct payments to them and that the chain of events alleged in the Complaint is too attenuated. However, for a money had and received claim, a plaintiff does not need to prove that the defendant received money directly from the plaintiff. *See* Bank of Saipan, 380 F.3d at 843 (allowing a money had and received claim against a defendant who did not receive money directly from plaintiff). Moreover, the payments to Defendants relate directly to Defendants' alleged scheme to seek inflated payments for the fraudulent treatments, and therefore are not too attenuated. Courts in other circuits have allowed unjust enrichment claims--with elements similar to Texas's money had and received claim--against medical providers who allegedly engaged in fraud schemes nearly identical to the one alleged in this case. *See, e.g.*, State Farm Mut. Ins. Co. v. Elite

---

[26] The Roopanis argue that State Farm does not allege any wrongful conduct by *them*, but State Farm does not need to allege that the Roopanis committed any wrongdoing other than receiving money from PAIN's fraudulent billing. *See, e.g.*, Mid-Town Surgical Ctr., LLP v. Blue Cross Blue Shield of Tex., No. H-11-2086, 2012 WL 3028107, at *4 (S.D. Tex. July 24, 2012) ("A cause of action for money had and received is not based on wrongdoing but instead, 'looks only to the justice of the case and inquires whether the defendant has received money which rightfully belongs to another.'") (quoting Doss v. Homecoming Fin. Network, Inc., 210 S.W.3d 706, 711 (Tex. App.-Corpus Christi 2006, pet. denied)).

Health Ctrs., Inc., No. 16-13040, 2017 WL 2351744, at *10 (E.D. Mich. May 31, 2017) (denying motion to dismiss when plaintiff alleged that "fraudulent services were billed, the dates of the services and the amounts billed" and "that it would be inequitable to allow the individual defendants to retain the benefit of payments made for services that were not rendered or were not medically necessary"); State Farm Mut. Auto. Ins. Co. v. Kugler, No. 11-80051, 2011 WL 4389915, at *12 (S.D. Fla. Sept. 21, 2011) ("While State Farm may not have disbursed the $13 million paid on allegedly fraudulent . . . claims directly to the medical defendants, it is reasonable to infer that the defendants benefitted from the fraudulent scheme alleged in the complaint when the patient's attorney collected first and third party settlement monies from State Farm and disbursed the proceeds directly to all medical lienors on the patient's behalf.").

Finally, the Roopanis argue that the Texas Business Organizations Code precludes State Farm's claim against them. *See* TEX. BUS. ORGS. CODE § 21.223(a) ("A holder . . . an owner . . . or a subscriber . . . may not be held liable to the corporation or its obligees with respect to . . . any contractual obligation of the corporation . . . on the basis of actual or constructive fraud."); § 101.002 (applying § 21.223 to limited liability companies); § 101.114 ("[A] member or manager is not liable for a debt, obligation, or liability of a limited liability company."). These

17

statutory provisions are facially inapplicable because State Farm does not allege that the Roopanis are liable for PAIN's contractual obligation, debt, or liability. Instead, State Farm alleges that the Roopanis received State Farm's money as "a portion of the funds obtained through Dr. Punjwani and P.A.I.N.'s fraudulent scheme."[27]

The cases on which the Roopanis rely dismissed claims when the plaintiffs did not plead facts alleging that the LLC member defendants individually received plaintiffs' money through the LLC. See Bates Energy Oil & Gas v. Complete Oilfield Servs., 361 F. Supp. 3d 633, 675-76 (W.D. Tex. 2019) (dismissing a money had and received claim when plaintiff failed to allege facts showing that defendant individually received plaintiff's money); Luppino v. York, No. SA-16-CV-00409-RCL, 2017 WL 8161008, at *8 (W.D. Tex. Nov. 27, 2017) (concluding that merely stating that plaintiff had invested money in an LLC in which defendants allegedly received a portion of plaintiff's investment money through other entities is "insufficient to sustain a claim for money had and received," and plaintiff's failure to plead that his money had passed through the entities to defendants was a factor in dismissal). Here, in contrast, State Farm alleges that the Roopanis, as sole members of PAIN, actually received State Farm's funds channeled through PAIN from the allegedly fraudulent insurance claims. This is sufficient to state a claim for money had and received.

---

[27] Id. ¶¶ 19-22.

18

## IV. Order

For the reasons set forth above, it is

ORDERED that Defendant Nooruddin S. Punjwani's Motion to Dismiss (Document No. 14) and Defendants Pain Alleviation & Interventional Needs, PLLC, Barketali M. Roopani, Anil B. Roopani, and Sohail B. Roopani's Motion to Dismiss (Document No. 27) are DENIED. It is further

ORDERED that the temporary stay of discovery ordered on August 23, 2019, is LIFTED.

The Clerk will enter this Order, providing a correct copy to all counsel of record.

SIGNED in Houston, Texas, on this 31ST day of December, 2019.

EWING WERLEIN, JR.
UNITED STATES DISTRICT JUDGE