# UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF TEXAS
# HOUSTON DIVISION

| | | |
|---|---|---|
| STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY and STATE FARM COUNTY MUTUAL INSURANCE COMPANY OF TEXAS, | ) ) ) ) | |
| Plaintiffs, | ) ) ) | |
| v. | ) ) ) | Case No. 4:19-CV-01491 Hon. Ewing Werlein, Jr. |
| NOORUDDIN S. PUNJWANI, M.D.; PAIN ALLEVIATION & INTERVENTIONAL NEEDS, LLC n/k/a PAIN ALLEVIATION & INTERVENTIONAL NEEDS, PLLC; BARKETALI M. ROOPANI; ANIL B. ROOPANI; and SOHAIL B. ROOPANI, | ) ) ) ) ) ) ) ) ) | |
| Defendants. | ) | |

## DEFENDANTS' MOTION FOR PROTECTIVE ORDER

Pursuant to Federal Rule of Civil Procedure 26(c), Defendants PAIN Alleviation & Interventional Needs, PLLC ("*PAIN*") and Barketali M. Roopani, Anil B. Roopani, and Sohail B. Roopani (collectively, the "*Roopani Defendants*") and Nooruddin S. Punjwani ("*Punjwani*") (collectively, "*Defendants"*), hereby move this Court for entry of a Protective Order specifically prohibiting and greatly limiting the scope of discovery conducted by State Farm.

### I.      Nature and Stage of the Proceeding

Plaintiffs State Farm Mutual Automobile Insurance Company and State Farm County Mutual Insurance Company of Texas (collectively, "*State Farm*"), filed suit on April 23, 2019, alleging that Defendants conspired to defraud State Farm when they treated automobile accident victims. Specifically, State Farm alleges a RICO claim against one individual Defendant, Dr.

Nooruddin S. Punjwani, and a claim for money had and received against all Defendants, including the PAIN and Roopani Defendants.[1]

On December 31, 2019, the Court denied the Defendants' respective Motions to Dismiss. (ECF Doc. 29). The deadline to complete discovery is February 21, 2021, and a docket call is set for January 7, 2022.

At this juncture in the litigation, the parties are engaged in discovery. At every opportunity, State Farm has attempted to publically denigrate the Defendants and their practice.[2] For example, in its response to Defendants' motion to quash the non-party law firm subpoenas, State Farm spilled considerable ink laying out in a public filing the unsubstantiated claims and theories of its case, despite the fact that it was completely irrelevant to the Motion to Quash. (ECF Docs. 54 and 56). Furthermore, State Farm's request that Defendants agree to de-designate "Confidential" documents so that State Farm could publically file documents located in patient medical records instead of file them under seal demonstrate State Farm's tactic to publically humiliate Defendants and their business. All of this despite the fact that Defendants have attempted to work with State Farm to provide State Farm with the discovery to which it is entitled under the Federal Rules of Civil Procedure. Due to State Farm's extremely aggressive approach, liberties taken in public filings, and positions regarding the scope of discovery, Defendants have no choice but to move this Court for a Protective Order that will provide express guidelines on the scope of discovery that may be conducted by State Farm, and expressly forbid State Farm in engaging in these tactics.

---

[1] The sole claim against the PAIN and Roopani Defendants is a claim for Money Had and Received.

## II.       Issues and Standard of Review

Defendants move this Court to enter a Protective Order under Rule 26(c) expressly limiting the scope of discovery State Farm may pursue in this action. Rule 26(c) allows the Court, on a showing of good cause, to:

> "issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense, including one or more of the following: (A) forbidding the disclosure or discovery;. . . (C) prescribing a discovery method other than the one selected by the party seeking discovery;. . . (D) forbidding inquiry into certain matters, or limiting the scope of disclosure or discovery to certain matters."

Fed. R. Civ. P. 26(c).  Whether the court may issue a Protective Order is within the court's "broad discretion." *McKinney/Pearl Rest. Partners, L.P. v. Metro. Life Ins. Co.*, 322 F.R.D. 235, 242 (N.D. Tex. 2016). "[T]he burden is upon the party seeking the protective order to show the necessity of its issuance, which contemplates a particular and specific demonstration of fact as distinguished from stereotyped and conclusory statements." *Id.* The Court may be "as inventive" as necessary to achieve the purposes of the rule. *ION, Inc. v. Sercel, Inc.*, 2009 WL 10677595, at *2 (E.D. Tex. May 20, 2009).

To fall within the scope of discovery outlined in Federal Rule of Civil Procedure 26(b), State Farm's discovery requests must meet two requirements: (1) relevance to their claims and (2) proportional to the needs of the case. Fed. R. Civ. P. 26(b). The Court determines whether the request is proportional based on "the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." *Id.*

3

### III.    Argument

**A.    Defendants seek the entry of a protective order providing guardrails for the expansive and overreaching discovery sought by State Farm.**

*i.    State Farm's discovery requests are far beyond the scope of appropriate discovery based on the claims it has brought against the separate Defendants.*

Defendants have vigorously defended this suit since its inception, denying the unsubstantiated allegations State Farm asserts in its Complaint.  State Farm, at the same time, has taken an aggressive and overreaching approach in this litigation based simply on the notion that it is entitled to broad discovery because it has asserted a RICO claim.  This approach has caused demonstrable hardship and prejudice to Defendants in that it has forced them to bear enormous costs in objecting to and responding to overreaching discovery. Consequently, Defendants, in an effort to control State Farm's enormously broad discovery efforts, are now forced to come before this Court laying out the issues the parties have been unable to resolve despite multiple conferences and seeking protection from the Court. Specifically, State Farm's pursuit of broad discovery has already and will continue to drive up the cost of discovery to Defendants, cause irreparable damage to relationships with Defendants' professional contacts, and even cause providers to threaten dissociation with PAIN. Despite Defendants' attempts to discuss these problems with State Farm, State Farm consistently falls back on the notion that because it asserts a claim for RICO against one of the named Defendants, State Farm is therefore entitled to sweeping discovery from *all* named Defendants *and* non-parties. That is simply not true—State Farm's allegation of a RICO claim against one defendant does not allow State Farm to pursue endless amounts of discovery from PAIN and the individual Roopani Defendants who have no such claim asserted against them. Furthermore, State Farm should certainly be prohibited from seeking endless amounts of discovery from non-named entities. State Farm certainly should not be allowed to circumvent the Federal

4

Rules governing discovery simply because State Farm asserts a claim for RICO against one named defendant.

Defendants have been forced to absorb the massive cost of defending this suit, engaging in major discovery efforts to produce electronically stored information, including already producing almost 27,000 pages of documents. Defendants have also made available for inspection thousands of fluoroscopic images located on PAIN's servers. Defendants have provided all of this information despite the fact that State Farm has yet to produce a single claims file to Defendants, files which were presumably reviewed prior to State Farm's initiation of this lawsuit.

As discovery continues, State Farm persists in its unwarranted and inappropriate discovery-related demands.  By way of example, State Farm issued expansive written discovery requests to each of the individual defendants, as well as PAIN. While Defendants agree that some of the requests may be tied to a claim for money had and received, the vast majority of the discovery sought by State Farm in those requests for production cannot be reasonably tied to a mere claim for Money Had and Received. Those requests are attached as **Exhibits A-1** through **A-5**.  Even after PAIN and the Roopani Defendants produced nearly 27,000 pages of discovery to State Farm, State Farm still pushes for further production of documents from PAIN and the Roopani Defendants, despite the fact that State Farm itself has yet to produce a single document in response to discovery requests, and despite the fact that PAIN and the Roopani defendants have agreed to provide further documents on a rolling basis, and have attended a number of meet-and-confer conference calls in a good faith effort to scale back the discovery sought by State Farm.

> ii. *State Farm has far exceeded the 25-interrogatory limit under Federal Rule of Civil Procedure 33.*

Moreover, completely disregarding and circumventing the very clear limitations on interrogatories under Federal Rule of Civil Procedure 33, State Farm issued far in excess of the 25 interrogatories (including subparts) to each of the Roopani Defendants, PAIN, and Dr. Punjwani.

5

Although there is not "precise test" for determining the number of discrete subparts, many district courts in the Fifth Circuit use the "related question approach." *Superior Sales W., Inc. v. Gonzalez*, 2020 WL 2761156, at *6 (W.D. Tex. May 27, 2020) (citing *Moser v. Navistar Int'l Corp.*, 2018 WL 3614012, at *6 (E.D. Tex. July 27, 2018)). Under this test, the Court should determine whether "the first question can be answered fully and completely without answer the second question" or if the separate subparts are "independent of the first and not factually subsumed within it." *Id.*

As just one example, in Interrogatory No. 2 to Dr. Punjwani, State Farm asked Dr. Punjwani to "[d]escribe [his] current and/or past contractual, financial, referral, ownership, or other relationships" with *27 different entities*—the majority of which bear no clear connection to this lawsuit. Because the answer as to each entity was independent and not "factually subsumbed" within any overarching request, this part of the interrogatory contained 27 discrete subparts. However, this single request did not end there.   Instead, *for each separate entity,* State Farm asked Dr. Punjwani to "identify (i) any referrals of patients between You and that entity and the volume of any such referrals, (ii) the terms of any contracts or other agreements You entered with that entity, (iii) the terms of any financial arrangements You entered with that entity, and (iv) the amounts of any payments or other compensation You paid to or received from that entity."[3] Although some of these subparts, which related to 27 different entities, may be tenuously related (e.g. the terms of any contracts and the amounts of any payments), others were clearly distinct (e.g. referrals of patients).

As another example, State Farm asked the Defendants to review an affidavit of a third party, identify all statements Defendants contend are inaccurate, and "for each such statement, state the basis for Your contention that such statement is inaccurate and identify all Documents

---

3    Ex. B-5 at 4-5 (Interrogatory No. 2).

that support Your contention that such statement is inaccurate." This request, while not explicitly divided into separate subparts, is similar to integratory requests that ask parties to explain the reasons the party denied requests for admissions. In that context, "there is a robust consensus that each request for admission constitutes a discrete subpart and a separate interrogatory." *Superior Sales*, 2020 WL 2761156, at \*6. Similarly, if the Court finds State Farm is even permitted to serve Interrogatory No. 16, the Court should find each separate statement Defendants identify is a discrete subpart.

Not only did State Farm issue these interrogatories in clear violation of Rule 33, completely ignoring the Federal Rules' twenty-five interrogatory limit without seeking leave of court or approaching the parties in advance of issuing the interrogatories, there are numerous interrogatories that cannot be appropriately discovered on a claim for money had and received. The interrogatories are attached as **Exhibits B-1 through B-5.**[4] This discovery was sought even after Defendants worked with State Farm in good faith early on in the discovery stages to obtain and provide bank records—arguably the only documents State Farm needs to pursue its claims for Money Had and Received—in an effort to show State Farm that a claim for money had and received was unwarranted against the Defendants.

### iii. The distinctions between separate corporate entities and individuals do not disappear because of the nature of State Farm's claims

In addition to the breadth of State Farm's discovery, State Farm's requests also ignore the distinctions between corporate entities and individuals and entities in which they may have an ownership interest. For example, Requests for Production Nos. 1, 2, 3, 5, 6, 7, 9, 10, 11, 12, 17,

---

[4]   The Defendants expressed concern regarding the number of interrogatories requested by State Farm at meet and confer, and State Farm has requested that Defendants withdraw their objections. Defendants cannot endure the cost of responding to those interrogatories and as such must stand on its objection.

18, and 19 served on Dr. Punjwani request information related to the "Elite Entities." State Farm

defined the "Elite Entities" as

> Elite Health Services (TINs: 452499238 and 461742613); Elite Imaging &
> Diagnostic; Elite Healthcare (NPI: 1215194345); Med Center Healthcare Services,
> L.P., d/b/a Elite Health Services – Medical Center; Clay Healthcare Services LLC,
> d/b/a Elite Health Services – West Houston; Elite Opco GP, LLC; Elite HSR, LLC;
> Elite HS Management, LLC; Elite HS Holdco, L.P.; Elite HS Staffing, LLC; and
> Elite GP, LLC, and their current and former officers, directors, members, partners,
> employees, agents, independent contractors, corporate parents, subsidiaries, and
> affiliates, and any other individuals or entities acting on their behalf.

It is undisputed that these corporations are *separate and distinct* from Defendant PAIN and the

individual defendants and that State Farm has not alleged otherwise. They are not named as

defendants in this lawsuit, and, based on State Farm's complaint, Dr. Punjwani's work for any of

the Elite Entities is *not* the basis for State Farm's RICO claim against him. *See* Dkt. 1 at 36-38.

And yet, State Farm has asked Dr. Punjwani, an individual, for "[a]ll Documents and

Communications reflecting or relating to any services You have performed for or on behalf of . . .

the Elite Entities"[5] and "[a]ll Documents and Communications relating to or reflecting the creation,

operation, and/or management of . . . the Elite Entities."[6]

    If Dr. Punjwani's work for Elite does not form the basis of State Farm's claims against him

how are all documents relating to *any services* he has ever performed for those companies relevant

to State Farm's claim or proportional to the needs of this case? Similarly, how are *all* documents

related to the operations and management of these companies, including, based on the language of

the request, the electricity bills and the receptionist's pay stubs, relevant? The Court should find

they are not.

    Even if these categories of documents were relevant, Defendants cannot produce

documents over which they do not have possession, custody, or control. Fed. R. Civ. P. 34. In

---

[5]  *See Ex*. A-5 at 6 (Request for Production No. 6);

[6]  *Id*. at 8 (Request for Production No. 12)

Dr. Punjwani's case, for example, while he may have an ownership interest in some of the Elite Entities, that does not mean he has possession, custody, or control of that entity's documents. *See, e.g.*, *Dotson v. Edmonson*, 2017 WL 4310676, at *5 (E.D. La. Sept. 28, 2017) (noting the Fifth Circuit has instructed that "mere access is not possession, custody, or control" and denying motion to compel employees of company to produce company's records) (quoting *In re Grand Jury Subpoena*, 646 F.2d 963, 969 (5th Cir. 1981)).[7]

> iv. *State Farm's third-party discovery requests demonstrate its scattershot approach to discovery, resulting in undue burden and harassment of Defendants and third parties*

Now, in one of the latest episodes of State Farm's concerted litigation strategy to dissuade physicians from treating automobile accident victims and drive up the cost of litigation, State Farm has issued a series of subpoenas to multiple non-parties, requesting their confidential records related to some of the patients at issue in this suit. These efforts are far reaching and outside the normal realm of the Federal Rules regarding discovery, levying an undue burden upon those non-parties. The requests are irrelevant, overly broad, harassing, unduly burdensome, cumulative and duplicative, constituting an improper fishing expedition, in violation of Fed. R. Civ. P. 26 and Fed. R. Civ. P. 45.  Further, many of the Notices of the Non-Party Subpoenas were filed incompletely (as they excluded Exhibit A, which appears to contain information necessary to substantively respond to the subpoenas) and with the instruction to the non-party to contact Plaintiffs' counsel

---

[7]    The *Dotson* court also cited *Am. Maplan Corp. v. Heilmayer*, 203 F.R.D. 499, 502 (D. Kan. 2001) as persuasive authority—a case that is particularly instructive here. In that case, the district court reversed the magistrate judge's order that required an individual defendant to produce documents from a separate corporation of which he was the president and minority shareholder. The district court found the magistrate judge's order disregarded the corporation's "its existence as a distinct legal entity" from the individual, and it explained the order improperly "ignore[d] the distinction between a corporation, on the one hand, and its officers and shareholders, on the other hand." The court also found the corporation was not a sole proprietorship and that the plaintiff had not alleged the corporation was the alter ego of the individual defendant. Accordingly, the plaintiff could not "properly seek to obtain from one entity or individual what belongs to another."

to secure a copy of Exhibit A. These actions put Defendants, and the non-parties, at a disadvantage and reached beyond the scope of reasonable and customary discovery.

Most significantly, State Farm issued these multiple third-party subpoenas before State Farm even verified that it could obtain the documents from the appropriate source: the parties to the litigation. The non-party subpoenas appear to be an improper fishing expedition designed to seek pre-litigation discovery of entities that are currently non-parties to this action. For example, on June 1, 2020, prior to PAIN and Roopanis' productions of documents, State Farm issued subpoenas to three Elite Entities—Elite Health Services – Sugar Land, Medical Center Healthcare services, L.P., d/b/a Elite Health Services – Medical Center, and Clay Healthcare Services, LLC, d/b/a Elite Health Services – West Houston—entities which are non-parties to the suit but have a business relationship with PAIN and the Roopani Defendants. Many of the documents that State Farm sought from the Elite Entities were provided shortly thereafter by the PAIN and Roopani Defendants on June 18, 2020, bates labeled PAIN-Roop 0000001 through PAIN-Roop 0026927. On multiple meet and confers, PAIN and the Roopani defendants have raised the issue that discovery of the Elite Entities is inappropriate, and simply because State Farm has raised a RICO claim against one individual defendant does not allow State Farm to disregard all corporate formalities and receive non-party documents from PAIN. In good faith, PAIN agreed to produce documents that are responsive and relevant to PAIN, nonetheless, State Farm continues to pursue documents from the Elite non-parties.

State Farm further engaged in premature and unwarranted third-party discovery when it issued multiple third-party subpoenas to five separate law firms on June 8, 2020, said subpoenas being incomplete and lacking in substantive information. As discussed in more detail in Defendants' Motion to Quash (ECF Doc. 45), these subpoenas were in violation of the Federal Rules because they lacked substantive information regarding the documents State Farm sought to

obtain, and specifically requested that those non-parties contact the defendants for a list of names, circumventing Defendants' ability to know the scope of the subpoenas and lacking transparency. The subpoenas also requested information that was clearly privileged between those non-party law firms and their clients. Furthermore, the subpoenas to the non-party attorneys included in those requests communications related to the Elite Entities, non-parties to the suit, which is highly improper and a clear example of how State Farm is using third-party discovery to engage in improper fishing expeditions.  As this Court is aware, many of the attorneys have responded to these subpoenas objecting and moving to quash on the basis that the subpoenas asked the law firms to provide privileged communications in violation of the law firms' respective ethical duties and in derogation of the Rules of Professional conduct. (*See e.g.,* ECF Docs 41, 42, 44 and 49).

On June 17, 2020, State Farm also issued subpoenas to three non-party providers, Okezie Okezie, Rehan Memon, and Sara Goel. The subpoenas request information that appear to amount to an improper fishing expedition, as they unashamedly request these non-parties to divulge confidential patient information. These requests appear to be pre-suit litigation tactics, or pre-suit discovery against those providers. Despite the fact that State Farm has been informed during meet and confers that the provider Okezie has no relation to any of the patients at issue in the Complaint, State Farm continues to seek the discovery. State Farm's service of those third-party subpoenas has not only forced Defendants to absorb the cost in objecting to those third-party subpoenas, it has served to harass the Defendants' professional contacts and damaged business relationships.

As fully laid out in Defendants' Joint Motion to Quash Plaintiffs' Non-Party Subpoenas, or, Alternatively, for a Protective Order, the discovery sought by State Farm in the non-party subpoenas is unreasonably "cumulative, duplicative, and more appropriately sought from the parties to the action. *See* Defendants' Joint Motion to Quash Plaintiffs' Non-Party Subpoenas, or, Alternatively, for a Protective Order, ECF Doc. 45 (citing *G.K. Las Vegas Ltd. P'ship v. Simon*

*Prop. Group, Inc.*, 2:04-CV-01199-DAE, 2007 WL 119148, at *4 (D. Nev. Jan. 9, 2007)). On multiple occasions, including lengthy meet and confers, the Defendants have informed State Farm that the information they seek from the non-parties is contained in the nearly 27,000 pages of documents provided to State Farm, and the files made available to State Farm for inspection. Nonetheless State Farm continues to harass and inappropriately press for discovery from those non-parties.

This motion is in no way an attempt to suggest that State Farm should be prohibited from conducting any and all discovery that it is allowed to conduct within the bounds of Federal Rule 26, nor is this motion meant to circumvent any possible right State Farm may have under the Federal Rules of Civil Procedure. Rather, this motion is meant to respectfully request that the Court provide guardrails and some limitation on the expansive discovery sought by State Farm. The Defendants, unlike State Farm, are not a major enterprise capable of engaging in unlimited discovery—especially when the discovery sought is beyond the bounds of a claim for money had and received. State Farm requires some boundaries, and the Defendants desperately need to stop the bleeding on the enormous litigation costs associated with the unlimited discovery sought by State Farm.

### IV.     Conclusion

WHEREFORE, Defendants move this Court for entry of a Protective Order limiting the scope of discovery State Farm may conduct and expressly stating that (1) the Defendants need not respond to more than 25 interrogatories, including subparts, (2) expressly prohibiting State Farm from engaging in further third-party discovery, (3) expressly ordering State Farm to limit its discovery requests to only entities which are parties to this action (4) expressly ordering that the parties need not engage in further discovery efforts unless and until State Farm responds to

discovery, and (5) order State Farm to stop making unsubstantiated claims about the Defendants'
businesses in public filings.

POLSINELLI PC

By:*/s/ Ebad Khan*
    Mark S. Armstrong, Esq.
    Texas Bar No. 01321900
    Fed. I.D. No. 219390
    1000 Louisiana Street, Suite 6400
    Houston, Texas 77002
    713-374-1600
    Fax: 713-374-1601
    marmstrong@polsinelli.com
    **Attorney in Charge**

    Lauren E. Tucker McCubbin, Esq.
    900 W. 48th Place, Suite 900
    Kansas City, Missouri 64112
    816-753-1000
    Fax: 816-753-1536
    ltucker@polsinelli.com

    Ebad Khan, Esq.
    Texas Bar No. 24092625
    Fed. I.D. No. 2810999
    1000 Louisiana Street, Suite 6400
    Houston, Texas 77002
    713-374-1600
    Fax: 713-374-1601
    ekhan@polsinelli.com

    ATTORNEYS FOR DEFENDANTS
    PAIN ALLEVIATION & INTERVENTIONAL
    NEEDS, LLC N/K/A PAIN ALLEVIATION &
    INTERVENTIONAL NEEDS, PLLC;
    BARKETALI M. ROOPANI; ANIL B. ROOPANI;
    AND SOHAIL B. ROOPANI

AHMAD, ZAVITSANOS, ANAIPAKOS, ALAVI
& MENSING, P.C.

*/s/ Sammy Ford, IV*
Todd W. Mensing, Esq.
Texas Bar No. 24013156
Federal Bar No. 302944
Sammy Ford, IV, Esq.
Texas Bar No. 24061331
Federal Bar No. 950682
Jordan Warshauer
Texas Bar No. 24086613
Federal Bar No. 2994699
1221 McKinney Street, Suite 2500
Houston TX 77010
713-655-1101
Fax:  713-655-0062
tmensing@azalaw.com
sford@azalaw.com
jwarshauer@azalaw.com

ATTORNEYS FOR DEFENDANT
NOORUDDIN S. PUNJWANI, M.D.

14

## **CERTIFICATE OF CONFERENCE**

The undersigned hereby certifies that counsel have conferred in a good faith effort to resolve the matters in dispute but are unable to reach an agreement. This conference took place on July 20, 2020 at 12:30 p.m. CST by phone between Matthew Ryan, counsel for Plaintiffs State Farm, and Lauren Tucker McCubbin, counsel for Defendant PAIN and the Roopani Defendants.

*/s/ Lauren E. Tucker McCubbin*
Lauren E. Tucker McCubbin

15

74227135.5

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that the above and foregoing pleading was served via the Court's ECF Notification system on this 19th day of August, 2020, to:

Matthew R. Ryan, Esq.
Adrian Jonak, Esq.
Jared T. Heck, Esq. *(pro  hac vice)*
Eric T. Gortner, Esq. *(pro  hac vice)*
Ross O. Silverman, Esq. *(pro hac vice)*
Katten Muchin Rosenman LLP
525 W. Monroe Street, Suite 1900
Chicago, IL  60661-3693
312-902-5200
Matthew.ryan@katten.com
Adrian.jonak@katten.com
Jared.heck@kattenlaw.com
Eric.gortner@kattenlaw.com
Ross.silverman@kattenlaw.com

M. Micah Kessler, Esq.
Nistico, Crouch & Kessler, P.C.
1900 West Loop South, Suite 800
Houston, TX  77027
(713) 781-2889
mkessler@nck-law.com

ATTORNEYS FOR PLAINTIFFS

*/s/Ebad Khan*
Ebad Khan