IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY and STATE FARM COUNTY MUTUAL INSURANCE COMPANY OF TEXAS,<br><br>                Plaintiffs,<br>v.<br><br>NOORUDDIN S. PUNJWANI, M.D.; PAIN ALLEVIATION & INTERVENTIONAL NEEDS, LLC N/K/A PAIN ALLEVIATION & INTERVENTIONAL NEEDS, PLLC; BARKETALI M. ROOPANI; ANIL B. ROOPANI; and SOHAIL B. ROOPANI,<br><br>                Defendants. | Case No. 4:19-cv-01491<br><br>Hon. Ewing Werlein, Jr. |

## DEFENDANT NOORUDDIN S. PUNJWANI'S MOTION TO COMPEL PRODUCTION OF DOCUMENTS FROM PLAINTIFFS

Defendant Nooruddin S. Punjwani hereby moves this Court to compel production of key documents from Plaintiffs State Farm Mutual Automobile Insurance Company and State Farm County Mutual Insurance Company of Texas (collectively, "**State Farm**"). In support of his Motion, Dr. Punjwani states the following:

### NATURE AND STAGE OF THE PROCEEDINGS

State Farm filed suit on April 23, 2019, alleging Defendants conspired to defraud State Farm when they treated automobile accident victims. Specifically, State Farm has brought a RICO claim against one individual defendant,

1

Dr. Nooruddin S. Punjwani, and a claim for money had and received against all Defendants.

After the Court ruled on Defendants' Motions to Dismiss, the parties began to engage in discovery. On April 23, 2020, Dr. Punjwani served a limited, targeted set of discovery requests on State Farm, including just twenty-two requests for production and nine interrogatories. On May 26, 2020, State Farm served its responses (attached as Exhibit 1 to this Motion). However, over two months later, State Farm has yet to produce a single document in response to Dr. Punjwani's requests.

## ISSUES AND STANDARD OF REVIEW

Dr. Punjwani has limited this motion to issues regarding the proper scope of discovery. Once State Farm begins to produce documents and the parties review emails based on an ESI protocol, Dr. Punjwani is hopeful that the parties can resolve any disputes about specific requests or the completeness of any party's production. However, based on conferences between the parties it is clear there are fundamental disagreements about the scope of discovery on which Dr. Punjwani respectfully requests the Court's guidance at this stage of the discovery process.

A party may obtain discovery "regarding any nonprivileged matter that is relevant to any party's claim or defense." Fed. R. Civ. P. 26(b)(1). A party resisting discovery has the burden to show "specifically how . . . each request is not relevant or how each [request] is overly broad, burdensome or oppressive." *Enron Corp. Sav. Plan v. Hewitt Associates, L.L.C.*, 258 F.R.D. 149, 159 (S.D. Tex. 2009).

## ARGUMENT AND AUTHORITIES

**A. The Court should order State Farm to produce complete claim files.**

*1. State Farm has inexcusably delayed producing even a small portion of the key documents in this lawsuit.*

In response to the majority of Dr. Punjwani's requests for production, including Request Nos. 1, 2, 3, 4, 5, 6, 7, 8, 9, 10, 11, 12, 13, 14, 16, 19, 20, and 21, State Farm stated it would produce "relevant, non-privileged portions of the claim files pertaining to the patients whose treatment is at issue in this action." *See* Ex. 1. State Farm also pointed to these claim files in lieu of a written response to Interrogatory No. 4. Ex. 1 at 30. Based on these responses, State Farm's claim files apparently contain the vast majority of information responsive to Dr. Punjwani's discovery requests. And yet, over one year after filing this lawsuit and four months after Dr. Punjwani served his discovery responses, State Farm has failed to produce a single one.

Based on the multiple appendices attached to State Farm's Complaint that contain much of the same information it now contends are in the claim files, this delay is particularly egregious because it appears that State Farm has already reviewed the claim files in some detail before filing suit. At the very least Dr. Punjwani's requests for relevant claim files (Requests Nos. 1, 2, and 3) were clearly foreseeable even before Dr. Punjwani served his requests.

Although State Farm has assured Defendants they intend to begin producing responsive documents within a few weeks, this Motion, and a Court order requiring State Farm to timely produce a substantial number of the claim files, is required to allow Dr. Punjwani to have as much time to review these files as possible. In addition,

the information in the claim files will likely serve as the basis for additional discovery requests. Accordingly, Dr. Punjwani requests the Court order State Farm to produce at least half of the 800+ claim files within two weeks of the Court's order on this Motion and to produce the remaining claim files on a rolling basis.

> 2. *State Farm has waived any privileged communications contained in the claim files that demonstrate its analysis of Defendants' treatment or bills.*

Even if State Farm produces all of the claim files tomorrow, State Farm has indicated in its responses and in conferences that it intends to remove and withhold any privileged communications in the claim files. Based on discussions with State Farm, this allegedly privileged information may include communications between attorneys for State Farm's insureds and State Farm about the underlying claims, including analyses of whether to pay the claims.

Attorney-client privilege does not provide parties with a sword and a shield; when a litigant puts privileged communications or documents at issue, a litigant waives attorney-client privilege and work product protection for those communications and documents. *See Conkling v. Turner*, 883 F.2d 431, 434 (5th Cir. 1989). Putting privileged information at issue can waive privilege both for attorney-client communications and work product protection depending on how the information was put at issue. *See Conkling,* 838 F.2d at 434; *see also Forever Green Athletic Fields, Inc. v. Babcock Law Firm, LLC*, No. CIV.A. 11-633-JJB, 2014 WL 29451, at *6–7 (M.D. La. Jan. 3, 2014).

A party waives privilege by putting the information at issue "through some affirmative act for his own benefit" and when allowing the privilege to "protect

4

against disclosure of such information would be manifestly unfair to the opposing party." *Conkling*, 883 F.2d at 434. Waiver occurs when (1) a party asserting privilege takes affirmative action (2) that makes the protected information relevant to the case, and (3) denying the opposing party access to vital information to its defense against the assertion. *See Hearn v. Rhay*, 68 F.R.D. 574, 581 (E.D. Wash. 1975).

Waiver exists even if a party does not attempt to use the privileged communications themselves: if a litigant makes factual assertions that can only be assessed by examining privileged communications, then privilege is waived. *In re Kidder Peabody Sec. Litig.*, 168 F.R.D. 459, 470 (S.D.N.Y. 1996). As an analogy, in Title VII cases, where a defendant affirmatively alleges an internal investigation concluded that reasonable care and preventative measures were implemented, attorney-client and work product protections are waived for all documents created as part of the internal investigation. *See Angelone v. Xerox Corp.*, 09-CV-6019, 2011 WL 4473534, at *2 (W.D.N.Y. Sept. 26, 2011).

In this case, State Farm has alleged it was harmed by Defendants allegedly "inducing" State Farm to make "higher settlement offers than would be warranted" without Defendants' allegedly improper conduct. *See, e.g.*, Complaint ¶ 9.[1] State Farm included these facts in its Complaint because it needs to show it relied on Dr. Punjwani's conduct when it made the settlement offers to prevail on its RICO

---

[1] *See also* Complaint ¶ 76.

claim. *See Tristar Inv'rs, Inc. v. Am. Tower Corp.*, 3:12-CV-0499-M, 2014 WL 1327663, at *12 (N.D. Tex. Apr. 3, 2014).[2]

Dr. Punjwani disputes any communications between State Farm and its insured's attorneys are actually protected by attorney-client privilege. *See* Tex. R. Evid. 503(b).[3] However, assuming *arguendo* the privilege created by the attorney-client relationship between the insureds and their attorneys belongs to State Farm in addition to the insured, by putting its reasons for paying the claims described in the Complaint at issue, State Farm has waived the privilege for any communications that bear on those reasons.

For example, while State Farm has alleged Dr. Punjwani somehow induced it to pay higher settlements than it would have but for his conduct, if the communications show State Farm or the insured's attorneys had other concerns related to the merits of the case, then that evidence calls State Farm's allegations into question. Similarly, State Farm has alleged Dr. Punjwani's treatment was "medically unnecessary." *See, e.g.* Complaint ¶ 73. If the communications between State Farm and its insured's attorneys discuss whether the procedures were necessary or not, those communications clearly bear on one of the primary issues in this case. Like the internal employment investigation in *Angelone*, State Farm has

---

[2] *See also State of Texas v. Enter. Companies, Inc*, 1986 WL 31561, at *1 (S.D. Tex. Jan. 7, 1986) ("The proper RICO plaintiff is the party who suffered direct injury as a result of a RICO violation.").

[3] State Farm has the burden to prove any privilege applies to portions of the claim files. *In re Santa Fe Int'l Corp.*, 272 F.3d 705, 710 (5th Cir. 2001).

waived any privilege related to the internal analysis of the claims at issue in this case whether conducted in conjunction with a lawyer or not.

## B. State Farm cannot limit its document production to the patients it named in the Complaint.

As described above, State Farm's claims are predicated on the idea that it paid more than it should have for personal injury claims but for Defendants' conduct. For example, as part of its Complaint, State Farm has alleged that PAIN's charges are "grossly excessive," and they even included a chart comparing PAIN's charges with other providers in the Houston area. Complaint ¶ 65. State Farm also alleges these charges "inflate the value of BI and UM Claims," leading to State Farm's alleged injury. Complaint ¶ 66.

To test this allegation, Dr. Punjwani has requested information from State Farm related to the costs it has paid for similar treatment in other cases and its evaluation of those costs (i.e., whether it thought they were reasonable). *See, e.g.*, Request for Production No. 4;[4] 12;[5] 13.[6] While this information directly concerns allegations on which State Farm has based its lawsuit, State Farm has objected that the requests are overbroad and irrelevant because they concern claims outside of the

---

[4] Ex. 1 at 6: "Documents showing Your evaluation of the costs of ESI in personal injury cases in Harris County in connection with the resolution, settlement, or payment of any claim made by a personal injury claimant."

[5] Ex. 1 at 13: "Documents sufficient to show all amounts You have paid for ESIs in Harris County. This includes payments made in settlement and as a result of a jury verdict."

[6] Ex. 1 at 14: "Documents and communications between You and third parties regarding the pricing of all procedures at issue in this case. This request includes communications with counsel for claimants, medical providers, and physicians."

7

ones State Farm chose to make a part of this litigation. Consistent with that objection, State Farm has limited its forthcoming production to responsive documents in the claim files for the patients at issue in this case. Limiting its response in this way does not allow Dr. Punjwani or, ultimately, the jury, to fully evaluate State Farm's allegations, and it is not permitted by the Federal Rules of Civil Procedure. *See* Fed. R. Civ. P. 26(b) ("Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case").

Similarly, State Farm's allegation that Dr. Punjwani performed medically unnecessary treatment is integral to its case. In particular, State Farm has accused Dr. Punjwani and PAIN of concocting an extensive and ongoing scheme to defraud it. Accordingly, Dr. Punjwani requested information related to all claims in which PAIN or Dr. Punjwani was a medical provider.[7] The relevance of this request is clear: Dr. Punjwani requested this information in part to determine if there are claims outside of this lawsuit in which Dr. Punjwani was a medical provider and State Farm paid the claim without complaint because it believed the treatment was medically necessary, or, even more importantly, a jury found the treatment was medically necessary. If those claims exist, then that evidence clearly cuts against the heart of State Farm's lawsuit. However, like the requests related to the costs of treatment, State Farm has objected to these requests as overbroad and irrelevant, and it has stated it will limit its production to claims at issue in this case. Like the requests

---

[7] *See, e.g.*, Requests for Production 1, 2, 3, 7. *See also* Requests for Production Nos. 5, 6, 9, 11, (communications between State Farm and different third parties related to Dr. Punjwani).

8

related to the costs of treatment, the rules do not permit State Farm to avoid producing highly relevant documents.

## CONCLUSION

State Farm has made incredibly serious allegations regarding Dr. Punjwani that threaten his career. To defend himself, Dr. Punjwani will have to rely primarily on documents in State Farm's possession, and yet State Farm has failed in its most basic discovery obligations by inexcusably delaying production of documents it knew it would need to produce the day it filed this lawsuit over a year ago. Moreover, while State Farm has aggressively pursued extensive discovery from Defendants and third parties, it has taken an impermissibly narrow view of the relevance of the documents Dr. Punjwani has requested. Accordingly, Dr. Punjwani respectfully requests that the Court order State Farm to produce *at least* half of the 800+ claim files it has promised to produce within two weeks of the Court's order; find that communications related to State Farm's analysis of the underlying claims are not privileged; and find Dr. Punjwani is entitled to information outside of the specific claims on which State Farm has based its case.

Dated: August 26, 2020

Respectfully submitted,

**AHMAD, ZAVITSANOS, ANAIPAKOS, ALAVI & MENSING P.C.**

*/s/ Sammy Ford*
Todd W. Mensing
State Bar No. 24013156
Federal Bar No. 302944
tmensing@azalaw.com
Sammy Ford IV
Texas Bar No. 24061331
Federal Bar No. 950682
sford@azalaw.com
Jordan L. Warshauer
Texas Bar No. 24086613
Federal Bar No. 2994699
jwarshauer@azalaw.com
1221 McKinney, Suite 2500
Houston, Texas 77010
(713) 600-4979 (Phone)
(713) 655-0062 (Fax)

**ATTORNEYS FOR DEFENDANT NOORUDDIN S. PUNJWANI, M.D.**

## CERTIFICATE OF CONFERENCE

I, Sammy Ford, certify that on June 29, 2020 at 3:30 p.m. I conferred with Matthew Ryan, counsel for Plaintiffs, by phone regarding Defendant's discovery requests. During that conference and follow-up discussions the parties were unable to reach an agreement regarding the scope of the requests as described herein.

*/s/ Sammy Ford*
Sammy Ford

## CERTIFICATE OF SERVICE

I hereby certify that on August 26, 2020, the above and foregoing was served by CM/ECF on all counsel of record.

*/s/ Jordan Warshauer*
Jordan Warshauer