# UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF TEXAS

| | | |
|---|---|---|
| STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY and STATE FARM COUNTY MUTUAL INSURANCE COMPANY OF TEXAS, | ) ) ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) ) | Case No. 4:19-cv-01491<br><br>Hon. Ewing Werlein, Jr. |
| NOORUDDIN S. PUNJWANI, M.D.;<br>PAIN ALLEVIATION & INTERVENTIONAL NEEDS, LLC n/k/a PAIN ALLEVIATION & INTERVENTIONAL NEEDS, PLLC; BARKETALI M. ROOPANI; ANIL B. ROOPANI; and SOHAIL B. ROOPANI, | ) ) ) ) ) ) ) | Magistrate Judge<br>Frances H. Stacy |
| Defendants. | ) | |

## PLAINTIFFS' MOTION TO COMPEL NON-PARTIES CLAY HEALTHCARE SERVICES, LLC D/B/A ELITE HEALTH SERVICES – WEST HOUSTON, ELITE HEALTH SERVICES – SUGAR LAND, AND MED CENTER HEALTHCARE SERVICES, L.P. D/B/A ELITE HEALTH SERVICES – MEDICAL CENTER TO PRODUCE DOCUMENTS RESPONSIVE TO SUBPOENAS

Plaintiffs State Farm Mutual Automobile Insurance Company and State Farm County Mutual Insurance Company of Texas (collectively, "Plaintiffs") respectfully submit the following motion to compel non-parties Clay Healthcare Services, LLC d/b/a Elite Health Services – West Houston, Elite Health Services – Sugar Land, and Med Center Healthcare Services, L.P. d/b/a Elite Health Services – Medical Center (collectively, the "Elite MRI Facilities") to produce documents responsive to subpoenas Plaintiffs issued to them on June 1, 2020 (the "Subpoenas," attached as Exhibits 1–3).

## **CERTIFICATE OF COMPLIANCE**

Plaintiffs hereby certify that they have conferred in good faith with the Elite MRI Facilities in an effort to resolve the issues in dispute as set forth in this motion, but the parties were unable to resolve the dispute.  On July 20, 2020, counsel for Plaintiffs, Matthew Ryan and Adrian Jonak, conferred telephonically with counsel for the Elite MRI Facilities, who also are counsel for defendants P.A.I.N. and the Roopanis, Lauren Tucker McCubbin, at 1:00 P.M. Central Time about the Elite MRI Facilities' objections to producing any documents responsive to the Subpoenas, but were unable to reach an agreement on the production of any documents.

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Allstate Ins. Co. v. Nassiri*,
  2011 WL 2516943 (D. Nev. June 23, 2011)........................................................16

*Booth v. City of Dallas*,
  312 F.R.D. 427 (N.D. Tex. 2015) ...................................................................2, 7

*British Int'l Ins. Co., Ltd. v. Seguros La Republica, S.A.*,
  200 F.R.D. 586 (W.D. Tex. 2000) .......................................................................2

*Doe 1 v. Baylor Univ.*,
  2020 WL 2220189 (W.D. Tex. May 7, 2020) ..................................................3, 19

*Dotson v. Edmonson*,
  2017 WL 11535244 (E.D. La. Nov. 21, 2017) .................................................3, 17

*Fischer v. Forrest*,
  2017 WL 773694 (S.D.N.Y. Feb. 28, 2017).......................................................17

*Gomez v. Nationwide Prop. & Cas. Ins. Co.*,
  2016 WL 6816215 (S.D. Tex. Feb. 26, 2016) .....................................................2

*Hutcheson v. Dallas Cty., Tex.*,
  2019 WL 1957997 (N.D. Tex. May 2, 2019) ...................................................3, 7

*Orchestrate HR, Inc. v. Trombetta*,
  178 F. Supp. 3d 476 (N.D. Tex. 2016) ...............................................................7

*Perez v. Boecken*,
  2020 WL 2733954 (W.D. Tex. May 26, 2020) ...................................................19

*In re Rosenthal*,
  2008 WL 983702 (S.D. Tex. Mar. 28, 2008).......................................................2

*S.E.C. v. Microtune, Inc.*,
  258 F.R.D. 310 (N.D. Tex. 2009) ......................................................................3

*Simmons v. Tex. Water Dev. Bd.*,
  2010 WL 3702626 (W.D. Tex. Sept. 16, 2010)..................................................20

*State Farm Mut. Auto. Ins. Co. v. Physiomatrix, Inc.*,
  2013 WL 10572229 (E.D. Mich. Aug. 13, 2013) ...............................................14

*State Farm Mut. Auto. Ins. Co. v. Pointe Physical Therapy, LLC*,
    2017 WL 5176403 (E.D. Mich. Nov. 3, 2017) ........................................................14

*State Farm Mut. Auto. Ins. Co. v. Warren Chiropractic & Rehab Clinic, P.C.*,
    315 F.R.D. 220 (E.D. Mich. 2016) ........................................................................16

*State Farm Mut. Ins. Co. v. Policherla*,
    2009 WL 2170183 (E.D. Mich. July 20, 2009) ......................................................14

*In re Subpoenas to Plains All Am. Pipeline, L.P.*,
    2014 WL 204447 (S.D. Tex. Jan. 17, 2014) .............................................................3

*United States ex rel. Univ. Loft Co. v. AGS Enters., Inc.*,
    2016 WL 9462334 (W.D. Tex. June 29, 2016) ......................................................13

*Williams v. City of Dallas*,
    178 F.R.D. 103 (N.D. Tex. 1998) ..........................................................................17

**Rules**

Fed. R. Civ. P. 26 ..............................................................................................................2, 7

Fed. R. Civ. P. 45 ...........................................................................................................2, 7, 18

# TABLE OF CONTENTS

**Page**

I.    NATURE AND STAGE OF THE PROCEEDINGS ............................................. 1

II.   STATEMENT OF THE ISSUES TO BE RULED UPON BY THE COURT ...................... 2

III.  SHORT SUMMARY OF ARGUMENT ............................................... 4

IV.   FACTUAL BACKGROUND ................................................ 5

V.    ARGUMENT .............................................. 7

      A.    The Subpoenas Seek Highly Relevant Information ............................................ 7

           1.    MRI Films and Communications Regarding the Patients Are Discoverable .......................................... 8

           2.    Documents Regarding the Financial and Other Arrangements Between the Elite MRI Facilities And Defendants Are Discoverable ................................................ 10

           3.    Documents Regarding the Relationships With Other Radiologists Are Discoverable ........................................ 14

           4.    Documents Regarding the Elite MRI Facilities' Charges for MRIs Are Discoverable ........................................ 14

           5.    Documents Regarding the Elite MRI Facilities' Solicitation of Patients And Relationships With Personal Injury Attorneys Are Discoverable ......................................... 15

      B.    The Subpoenas Are Not Unduly Burdensome and Are Proportional to the Needs of the Case.......................................... 17

      C.    The Elite MRI Facilities Have Failed to Demonstrate that any Subpoenaed Document Should Be Shielded From Disclosure as Privileged or Confidential.......................................... 18

           1.    The Elite MRI Facilities Have Failed to Meet Their Burden of Establishing Any of the Subpoenaed Documents are Privileged.............. 18

           2.    The Elite MRI Facilities Fail to Explain Why Any Subpoenaed Document Should be Withheld as "Confidential" When the Protective Order in this Case Protects Any Such Documents .................. 19

VI.   CONCLUSION.......................................... 20

## I.   NATURE AND STAGE OF THE PROCEEDINGS

As alleged in the Complaint, MRIs are an integral component of Defendants' scheme because they help facilitate the fraudulent medical services alleged in this case.[1]   Specifically, Dr. Punjwani and P.A.I.N. use MRIs as the entry point to the scheme because prior to going to P.A.I.N., patients are almost always ordered to undergo MRIs, many of which Dr. Punjwani himself falsely interprets and uses as a pre-text to "justify" his subsequent medically unnecessary spinal injections ("ESIs").   Patients are typically sent for their MRIs at the Elite MRI Facilities — and this is no coincidence: the Elite MRI Facilities are: ███████████████████████████ ████████████████████████████████████████████████████████ ███████, and are indistinguishable to patients.   Thus, contrary to the Elite MRI Facilities' objections to the Subpoenas, the Elite MRI Facilities are ***not*** disinterested "third parties" roped into unnecessary discovery, but rather are direct extensions of Defendants' medical entities and an integral tool in the effectuation of the fraud.

The parties are now engaged in discovery.   Plaintiffs are seeking documents and information regarding the Elite MRI Facilities' involvement in the treatment of the patients at issue and the Defendants' financial and control relationships with the Elite MRI Facilities.   The Elite MRI Facilities have objected to the subpoenas in their entirety.[2]   This is unsurprising given Defendants' recent, untenable position that any and all third-party discovery — including

---

[1] Defendants are, collectively, Nooruddin Punjwani, M.D. ("Dr. Punjwani"), Pain Alleviation & Interventional Needs, PLLC ("P.A.I.N."), Barketali Roopani, Anil Roopani, and Sohail Roopani.   Barketali, Anil, and Sohail Roopani are collectively referred to herein as "the Roopanis."

[2] Defendants have largely objected to producing discovery related to the Elite MRI Facilities.   *See, e.g.*, Ex. 4, June 29, 2020 letter from L. McCubbin to M. Ryan.   For several discovery requests, they have agreed to only produce documents relating to P.A.I.N., and not the Elite MRI Facilities.   For others, they have responded they will only produce unspecified documents if they contain "overlapping information for both P.A.I.N and the Elite MRI Facilities."   Ex. 5, July 16, 2020 email from S. Ford to M. Ryan ("Dr. Punjwani will not agree to independent discovery into Elite.   If a document contains overlapping information regarding Elite and PAIN I will either produce it or make you aware that I am withholding that information by way of redaction.").

discovery from the Elite MRI Facilities — is impermissible.[3]  Most recently, on August 19, 2020, Defendants filed a sweeping motion to block Plaintiffs from obtaining any discovery from non-parties, including the Elite MRI Facilities, as well as from Defendants themselves.  *See* ECF 64.

As explained below, the Subpoenas seek relevant and important information regarding key players in the scheme, the Elite MRI Facilities' objections are boilerplate and meritless, and, accordingly, the Court should grant Plaintiffs' motion.

## II.    STATEMENT OF THE ISSUES TO BE RULED UPON BY THE COURT

The Elite MRI Facilities should be compelled to produce all documents responsive to the Subpoenas, which are directly relevant to Plaintiffs' claims, and certainly permissible discovery. Under Fed. R. Civ. P. 26(b), "[p]arties may obtain discovery regarding any matter, not privileged, that is relevant to any party's claim or defense."  *See In re Rosenthal*, 2008 WL 983702, at *4 (S.D. Tex. Mar. 28, 2008); *British Int'l Ins. Co., Ltd. v. Seguros La Republica, S.A.*, 200 F.R.D. 586, 589 (W.D. Tex. 2000).  The party moving to compel discovery bears the initial burden of showing that the materials sought are relevant, and the burden then shifts to the party opposing the discovery request to show why the requested discovery should not be permitted.  *Gomez v. Nationwide Prop. & Cas. Ins. Co.*, 2016 WL 6816215, at *2 (S.D. Tex. Feb. 26, 2016).

The Elite MRI Facilities lodge several boilerplate, meritless objections to producing responsive documents.  First, they object that the Subpoenas do not seek relevant information, erroneously arguing the Subpoenas "in no way tie[]" the information sought to the issues in dispute.  *See* Ex. 6 (Elite MRI Facilities' Responses and Objections to Plaintiffs' Non-Party Subpoenas).  Relevance under Fed. R. Civ. P. 45 is the same as under Fed. R. Civ. P. 26, *see Booth*

---

[3] Indeed, Defendants filed a motion to quash Plaintiffs' subpoenas to five law firms, despite having no interest in the documents subpoenaed by Plaintiffs.  P.A.I.N. and the Roopanis have also filed a motion for a protective order to preserve the confidentiality of certain documents so that their improper relationships with relevant third parties may be concealed from public filings.

*v. City of Dallas*, 312 F.R.D. 427, 430 (N.D. Tex. 2015), and is to be "construed broadly." *Hutcheson v. Dallas Cty., Tex.*, 2019 WL 1957997, at *4 (N.D. Tex. May 2, 2019). The relevance standard is easily met here.

Second, the Elite MRI Facilities object that the Subpoenas would impose an undue burden because, they contend, Plaintiffs should have to first demonstrate that they cannot obtain responsive discoverable information from Defendants first — even though the Elite MRI Facilities are virtually indistinguishable from P.A.I.N. — the alleged RICO enterprise. "The rule in the 5th Circuit is that the third party objecting to a subpoena on the basis that the subpoena is unduly burdensome bears the burden of showing why discovery should be denied." *Dotson v. Edmonson*, 2017 WL 11535244, at *2 (E.D. La. Nov. 21, 2017). The Elite MRI Facilities cannot meet this burden here.

Third, the Elite MRI Facilities lodge non-specific objections to the Subpoenas "to the extent" they seek privileged and confidential information. To assert a valid privilege, the Elite MRI Facilities must offer "particular and specific demonstration[s] of fact" to support the assertion. *Doe 1 v. Baylor Univ.*, 2020 WL 2220189, at *3 (W.D. Tex. May 7, 2020). "A general allegation of privilege is insufficient to meet this burden." *S.E.C. v. Microtune, Inc.*, 258 F.R.D. 310, 315 (N.D. Tex. 2009). Where a party objects to producing documents on the grounds that they contain confidential or proprietary information, the objecting party "bears the burden to demonstrate that the subpoena seeks trade secrets or confidential information, and that the disclosure would be harmful to its interests." *In re Subpoenas to Plains All Am. Pipeline, L.P.*, 2014 WL 204447, at *4 (S.D. Tex. Jan. 17, 2014). Again, the Elite MRI Facilities have not met this burden here.

## III.     SHORT SUMMARY OF ARGUMENT

This Court should require the Elite MRI Facilities to produce all documents responsive to the Subpoenas.  Far from being the inconsequential non-parties they claim to be, the Elite MRI Facilities are ***owned*** and controlled by the Roopanis and Dr. Punjwani, all named Defendants. Further, more than half of the patients at issue in this case received MRIs at these captive MRIs facilities, which are at the ***same*** locations as the P.A.I.N. clinics, so that Dr. Punjwani could then provide his false interpretations as a pretext for his subsequent fraudulent injections.  As has become apparent through discovery in this case, the Elite MRI Facilities are virtually indistinguishable from the P.A.I.N. clinics— the alleged RICO enterprise — sharing the same owners, personnel, locations, attorneys, and accountants, and between which is the apparent free-flow of money, including profits Defendants have reaped from the fraud scheme.  Thus, there should be no dispute that targeted discovery into the Elite MRI Facilities' role in this scheme is well within the permissible scope of discovery under the Federal Rules.

To this end, the Subpoenas seek documents narrowly tailored to unravel the Elite MRI Facilities' role, including documents regarding: (1) the patients at issue in this case (*i.e.*, who received unnecessary treatment from Dr. Punjwani) on whom the Elite MRI Facilities performed MRIs, including the MRI films (Request 1, 7–8); (2) the Elite MRI Facilities' business relationship with and payments made to and/or received from Defendants, including Dr. Punjwani (Requests 2–3, 5, 7, 9); (3) business relationships with other radiologists (other than Dr. Punjwani) who performed services for them (Request 4); (4) amounts charged by the Elite MRI Facilities for healthcare services, including MRIs, performed by them, and the costs to provide them (Request 6); and (5) the recruitment, referral, and solicitation of patients, including documents reflecting business relationships between the Elite MRI Facilities and personal-injury law firms, referral services, or other healthcare providers (Request 8).

4

The Elite MRI Facilities have refused to produce a single responsive document.[4]  Instead, they have made three boilerplate, non-specific objections that essentially boil down to the fact that they are technically non-parties, which the Elite MRI Facilities (and Defendants) erroneously claim automatically makes them and their conduct outside the bounds of discovery.  First, they use varying general language to object to the relevance of the requested documents even though the requests are narrowly tailored to obtain relevant discovery.  Next, they object that the Subpoenas necessarily impose an undue burden on them because they are non-parties, and that Plaintiffs should first have to demonstrate "an inability to obtain the information from parties to the litigation[,]" Ex. 6 at 6–7, 9–12, 14 — a pretextual objection considering the Elite MRI Facilities are owned by the Roopanis and Dr. Punjwani, who have blocked Plaintiffs from obtaining discovery regarding the Elite MRI Facilities through party discovery.   Lastly, the Elite MRI Facilities object to the Subpoenas "to the extent" they request documents containing privileged or confidential information, even though the Elite MRI Facilities have not met their burden of identifying a single responsive privileged or confidential document.  And even if the Elite MRI Facilities believed any responsive documents contain privileged or confidential information, their recourse is to identify any privileged documents on a log and to produce any confidential documents subject to the Protective Order.  The Court should overrule the Elite MRI Facilities' objections and grant Plaintiffs' motion.

## IV.  FACTUAL BACKGROUND

This case is principally about Dr. Punjwani's fraudulent medical evaluations and medically unnecessary ESIs for patients treating at the P.A.I.N. clinics.  Dr. Punjwani's medical evaluations,

---

[4] After objecting to the Subpoenas in their entirety for over 5 months, the Elite MRI Facilities made an eleventh-hour offer on October 20, 2020, to allow Plaintiffs to inspect MRI films responsive to the Subpoenas.  However, their offer of inspection of MRI films — rather than production of MRI films or of any other responsive document — is insufficient.

MRI interpretations, and ESIs are all predetermined and not based on patients' legitimate medical needs. Dr. Punjwani and P.A.I.N. then provide the fraudulent bills and documentation to personal-injury attorneys ("PI Attorneys") representing the patients in bodily injury claims ("BI Claims") and underinsured/uninsured motorist claims ("UM Claims"). The PI Attorneys then submit the fraudulent bills and supporting documentation to Plaintiffs to support time-limited demands that Plaintiffs settle the corresponding insurance claims at or within policy limits. Indeed, as discovery to date has shown, the PI Attorneys appear to improperly dictate the medical treatment received by at least some of the patients at P.A.I.N.

MRIs are a significant first step in the fraud scheme here. As alleged in the Complaint, patients who receive ESIs from Dr. Punjwani frequently receive MRIs at Defendants' captive MRI facilities, the Elite MRI Facilities. As described in greater detail below, the fact that so many patients who treat at P.A.I.N. obtain MRIs from the Elite MRI Facilities is no coincidence: Although Defendants attempt to portray the Elite MRI Facilities as stand-alone, unaffiliated entities, ████████████████████████████████████████████████████ ████████████████████████████████████████████████████████ ████████████████. Thus, to a large extent, the Elite MRI Facilities and P.A.I.N. are one shared entity. More significantly, the real reason so many patients go to the Elite MRI Facilities for MRIs is that it allows Dr. Punjwani to provide fraudulent interpretations of the MRIs in which he over-reads the MRI images and uses predetermined, boilerplate language as a pre-text to justify his subsequent pain injections. Compl. ¶¶ 51–52. Thus, discovery into these MRI entities — including production of the MRI films, the financial relationships pertaining to ownership and control of these facilities, and the role of PI Attorneys in these facilities — is appropriate discovery in this case.

## V.     ARGUMENT

As a preliminary matter, the Court should reject the Elite MRI Facilities' objections because they are boilerplate, unsupported, and thus invalid.  *See Orchestrate HR, Inc. v. Trombetta*, 178 F. Supp. 3d 476, 507 (N.D. Tex. 2016) ("[G]eneral objections… are invalid. Objections to discovery must be made with specificity, and the responding party has the obligation to explain and support its objections.").  But even if the Court considers the Elite MRI Facilities' objections, the Court should grant the motion to compel because the Subpoenas seek highly relevant information, and the Elite MRI Facilities' non-specific objections are meritless.

### A.     The Subpoenas Seek Highly Relevant Information

The Subpoenas seek highly relevant, discoverable information, which the Elite MRI Facilities should be ordered to produce.  Under Federal Rule of Civil Procedure 26(b)(1), relevance is construed "broadly to include '[a]ny matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case.'"  *Hutcheson*, 2019 WL 1957997, at *4 (citation omitted).  Relevance under Rule 45 is the same as under Rule 26 and is construed just as broadly.  *See Booth*, 312 F.R.D. at 430.

The Subpoenas each contain nine narrowly tailored requests seeking five specific categories of information:

- The first category (Requests 1, 7–8) seeks documents and communications regarding the patients at issue in this case, including their MRI films;

- The second category (Requests 2, 3, 5, 7, 9) seeks documents regarding the Elite MRI Facilities' business relationship with and payments to and/or received from Defendants, including Dr. Punjwani;

- The third category (Request 4) seeks documents and communications regarding the Elite MRI Facilities' business relationships with radiologists other than Dr. Punjwani;

- The fourth category (Request 6) seeks documents and communications reflecting the amounts charged by the Elite MRI Facilities for healthcare services, including MRIs, and the costs to provide them;

- The fifth category (Request 8) seeks documents regarding the recruitment, referral, and solicitation of patients, including documents reflecting business relationships between the Elite MRI Facilities and personal-injury law firms, referral services, or other healthcare providers.

*See* Exs. 1–3.

               1.     <u>MRI Films and Communications Regarding the Patients Are Discoverable</u>

Regarding the first category, documents and communications concerning the patients at issue in this case are relevant and discoverable, which the Elite MRI Facilities do not dispute. The Complaint alleges that P.A.I.N. and Dr. Punjwani submitted fraudulent bills and supporting documentation for treatment purportedly provided to these patients, 449 of whom received MRIs or other forms of imaging at the Elite MRI Facilities, and Plaintiffs ultimately paid those bills as part of settlement demands. Indeed, the Complaint specifically alleges that many of the patients obtain MRIs at the Elite MRI Facilities, and that Dr. Punjwani falsely over-reads them to create a pretext for his subsequent ESIs. Compl. ¶¶ 51–52. As detailed below, discovery has revealed that ███████████████████████████████████████████████████████████ ████████████████████████.

The very few films Plaintiffs have obtained for patients who received MRIs at the Elite MRI Facilities to-date reflect that Dr. Punjwani made up or exaggerated findings to support the medically unnecessary ESIs he performed. As just one example, Dr. Punjwani's MRI report for patient A.D. reflects two herniations in the cervical spine, but the MRI film of the patient's cervical spine reveals no herniations whatsoever. Compl. ¶ 52 (citing Compl. Ex. 23 [ECF 1-24], Cervical MRI Report for Patient A.D.). In a legitimate setting, before recommending and performing an ESI a physician would evaluate whether the radiologic evidence, such as MRIs, correlate with the clinical findings and indications. *Id.* ¶ 29. In contrast, Dr. Punjwani in his initial exam reports (a) merely repeats the principal findings from the patients' MRI reports, many of which were likely

over-read by him, including most notably the existence of any herniations, protrusions, or bulges; (b) provides a minimal description of the patients' purported condition; and (c) for virtually all patients, includes a stock sentence that the MRI findings "correlate with clinical symptoms" without any explanation or documentation. *Id.* ¶¶ 42, 50. These are not legitimate or credible MRI interpretations across such a wide swath of patients, and his stock sentence merely papers a pretextual reason to perform his predetermined injections. Indeed, Dr. Punjwani then leverages these MRI findings to support his medically unnecessary ESI recommendations for virtually all patients. *Id.* From the few MRI films of the patients at issue that Plaintiffs have been able to obtain, it is apparent that Dr. Punjwani prepares MRI reports reflecting findings of abnormalities that do not exist or that exaggerate the severity of abnormalities to support his medically unnecessary ESI recommendations. *Id.* ¶ 52. Should the Elite MRI Facilities be ordered to produce MRI films for the patients at issue, Plaintiffs believe they would similarly reflect that Dr. Punjwani regularly fabricated or exaggerated findings, which would serve only to justify his inevitable ESI recommendations.

Thus, the Elite MRI Facilities are central participants in the scheme, and the documents they possess relating to these patients — including MRI films specifically used to support Dr. Punjwani's recommendations for his unnecessary ESIs — are equally central to Plaintiffs' assessment of the treatment purportedly rendered to them by Dr. Punjwani and P.A.I.N. Moreover, Defendants deny that Dr. Punjwani overreads the MRI films or that the Elite MRI Facilities play any role in this scheme, and thus Plaintiffs have an additional reason to obtain this discovery: to rebut any defenses Defendants may raise about the legitimacy of Dr. Punjwani's MRI interpretations.

2.      Documents Regarding the Financial and Other Arrangements Between the
        Elite MRI Facilities And Defendants Are Discoverable

Documents regarding the Elite MRI Facilities' business relationship with Defendants,
including payments made to or received from them, are also relevant and discoverable.  While the
Elite MRI Facilities' subpoena responses attempt to portray the Elite MRI Facilities as
disinterested, unaffiliated parties unrelated to Defendants' scheme, discovery to date suggests
otherwise.  Specifically, Defendants formed the Elite MRI Facilities, control them, and use them
(1) to funnel patients to P.A.I.N. so that Dr. Punjwani can subject them to medically unnecessary
ESIs; (2) as profit centers for the Roopanis and Dr. Punjwani for the MRIs performed on patients
there; and (3) likely as a siphon for moneys obtained from P.A.I.N. that are then redirected through
the Elite MRI Facilities and to the Roopanis and/or Dr. Punjwani.

Although the Roopanis have admitted to having management roles in some of the Elite
MRI Facilities, they have refused to acknowledge their ownership and control of any of them.[5]
This, alone, entitles Plaintiffs to discovery on the financial and business relationship between the
Elite MRI Facilities and Defendants, including the Roopanis, to both establish Plaintiffs'
contention that Defendants indeed effectively own and control the Elite MRI Facilities, and rebut
their defenses that they do not.

Despite their proclamations in discovery responses, growing evidence suggests Defendants
collectively own and control the Elite MRI Facilities.   Discovery shows ▮▮▮▮▮▮▮▮▮▮▮▮

---

[5] *See* Ex. 7, Defendant Anil B. Roopani's Answers to Plaintiffs' First Set of Interrogatories, at 5–9 (acknowledging that Anil Roopani provides "Chief Financial Officer services" to Elite Health Services, but stating he has no financial or ownership relationship with other Elite MRI Facilities); Ex. 8, Defendant Barketali M. Roopani's Answers to Plaintiffs' First Set of Interrogatories, at 5–9 (acknowledging that Barketali Roopani provides "Chief Executive Officer services" to Elite Health services, but stating he has no financial or ownership relationship with other Elite MRI Facilities); Ex. 9, Defendant Sohail B. Roopani's Answers to Plaintiffs' First Set of Interrogatories, at 5–9 (acknowledging that Sohail Roopani provides "Chief Executive Officer services" to Elite Health Services, but stating he has not financial or ownership relationship with other Elite MRI Facilities).

█████████████████████████████████████████████ █ ████

██████████████████████████.[7]  Sohail Roopani is also the registered agent for both Med Center

Healthcare  Services,  L.P.  and  Clay  Healthcare  Services,  LLC.[8]   In  addition,  ██████████

████████████████████████████████████████████████████████████████

█████████████████████████.[9]

Finally,  the  evidence  shows  the  Roopanis  had  access  to  and  managed  the  Elite  MRI

Facilities' financial accounts.  ████████████████████████████████████████████

█████████.  *See, e.g.*, Ex. 14.  ████████████████████████████████████████

████████████████████████████████████████████.[10]   Thus, discovery is needed

to establish a key fact in dispute: whether the Roopanis indeed are owners and controllers (and

profit from) MRI entities that are an important part of this fraud scheme

█████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████[11]

---

[6]  *See* Ex. 10. ███████████████████████████████████████████████
█████████████████████████████████████

[7] The Roopanis' ownership of Med Center Health Care Services is more of a tangled web.  On Med Center Healthcare Services, L.P.' certificate of formation, its "sole general partner" is identified as Elite Opco GP, LLC, a company formed by the Roopanis.  *See* Ex. 11, certificate of formation for Med Center Healthcare Services, L.P. and certificate of formation for Elite Opco GP, LLC.

[8] *See* Ex. 12, Franchise Tax Account Status for Clay Healthcare Services, LLC and Med Center Healthcare Services, L.P.

[9] *See* Ex. 13. ███████████████████████████████████████████████████
██████████████████████████

[10] *See* Ex. 15. █████████████████████████████████████████████████████
████████████████████████████████████████████████████████

[11] *See* Ex. 16. ███████████████████████████████████████████████████████
████████████████████████████████

██████████████████████████████████████████████████████████████

██ ,[12] and has held himself out as its managing partner in state licensing materials.[13]

Discovery on the nature of the financial arrangements, including payments between the parties and the Elite MRI Facilities, is necessary to establish Plaintiffs' contention that the Roopanis and Dr. Punjwani operate P.A.I.N. and the Elite MRI Facilities as a single business, with virtually complete overlap in business operations — a contention that Defendants hotly dispute. For instance, ████████████████████████████████████████

██████████████████████████████████████████████████████████████

███████████████████████████████████ █ ████████████████████████

██████████████████████████████████████████████████████████████

████████████████████████████ █ ██████████████████████████████

██████████████████████████████████████████████████████████████ [16]



---

[12] *See* Ex. 17, ████████████████████████████████████████ ███████ .

[13] *See* Ex. 18, July 9, 2013 Application for Radioactive Material License (Dr. Punjwani represents himself to be the "Managing Partner" of Clay Healthcare Services in radioactive material license application materials submitted to the Texas Department of State Health Services).

[14] *See* Ex. 19, ████████████████████████████████████ ; Ex. 20, ██████████████████████████████████████████████████

[15] *See, e.g.*, Ex. 21, ████████████████████████████████████ ; Ex. 22, ██████████████████████████████████████████████████ ; Ex. 23, ████████████████████████████

[16] *See, e.g.*, Ex. 20.

In addition, ███████████████████████████████████████████████████

███████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████

███████████████████████████████████████████████████

Importantly, as noted above, there was no meaningful distinction to patients between P.A.I.N. and the Elite MRI Facilities.  For example, when one patient was asked about an injection he received at P.A.I.N., he insisted he had never been to P.A.I.N. and that "where they took the MRI, that's where they gave me the injection."  Ex. 24, Patient B.H. Dep., 30:17–31:6, May 18, 2018.

Thus, discovery into the financial payments between Defendants and the Elite MRI Facilities, the flow of money, including who profited from this fraud scheme, as well as the business and contractual relationships, and communications among the parties, is all relevant to establishing who actually owned and controlled the Elite MRI Facilities.  This fact is relevant to showing the jury the full extent of the fraud scheme, including the role the MRIs played in both facilitating the fraud, and establishing the motive and the financial gain Defendants had for funneling patients through their MRI facilities to facilitate the fraudulent ESIs.

In similar cases, courts across the country have recognized subpoenas to non-parties as proper inquiries for discovery of information regarding involvement of non-parties in fraud schemes and their relationships with defendants, including financial information between them. *See, e.g.*, *United States ex rel. Univ. Loft Co. v. AGS Enters., Inc.*, 2016 WL 9462334, at *9 (W.D. Tex. June 29, 2016) (granting motion to compel non-party's production of financial records where

plaintiff's claims "are specifically related to . . . individuals who have facilitated the alleged scheme through their access to [the nonparty's] accounts"); *State Farm Mut. Auto. Ins. Co. v. Pointe Physical Therapy, LLC*, 2017 WL 5176403, at *2 (E.D. Mich. Nov. 3, 2017) (granting motion to compel non-party's financial records in RICO case where said records "may reveal financial inter-connectedness among defendants and third-parties, including the identity of those who profited from the fraud scheme"); *State Farm Mut. Auto. Ins. Co. v. Physiomatrix, Inc.*, 2013 WL 10572229, at *3 (E.D. Mich. Aug. 13, 2013) (same).

### 3.   Documents Regarding the Relationships With Other Radiologists Are Discoverable

Documents regarding the Elite MRI Facilities' relationships with radiologists other than Dr. Punjwani are relevant and discoverable in that they will help Plaintiffs determine whether the Elite MRI Facilities have unique or different arrangements with Dr. Punjwani, as well as whether other radiologists are similarly part of the scheme.  In particular, documents and communications reflecting how other radiologists are referred patients or are compensated by the Elite MRI Facilities, the volume of patients they treated, and the roles they had at the Elite MRI Facilities will enable Plaintiffs to better assess how unique Dr. Punjwani's role at the Elite MRI Facilities was and how critical Dr. Punjwani was to the scheme's success.  This category is also central to Plaintiffs' ability to identify witnesses for deposition and trial.  *See State Farm Mut. Ins. Co. v. Policherla*, 2009 WL 2170183, at *6 (E.D. Mich. July 20, 2009) (denying motion to quash where records sought from third party are necessary for State Farm to "identify other witnesses who may have participated in the fraudulent scheme").

### 4.   Documents Regarding the Elite MRI Facilities' Charges for MRIs Are Discoverable

Documents reflecting the amounts the Elite MRI Facilities charge for healthcare services are also discoverable.  As alleged in the Complaint, Defendants use charges for healthcare services

in "demand packages" submitted by PI Attorneys to extract wrongful payments from Plaintiffs. The Elite MRI Facilities' MRI charges are frequently included in these demand packages. Plaintiffs should be able to determine the degree to which Defendants are profiting from this component of the scheme, particularly since one allegation in this case is that that MRIs performed on the patients at issue also artificially inflated the medical bills to increase the value of demand packages.  Compl. ¶ 53.   Plaintiffs should be able to assess whether and to what degree the MRIs themselves motivated PI Attorneys to refer their clients to Defendants and to the Elite MRI Facilities, and the degree to which they may have been involved in directing patient treatment, █████

████████████████████████████████.[17]

5.   Documents Regarding the Elite MRI Facilities' Solicitation of Patients And Relationships With Personal Injury Attorneys Are Discoverable

Similarly, Plaintiffs should be able to obtain critical documents regarding the Elite MRI Facilities' relationships with others regarding the referral and solicitation of patients.  As the Complaint alleges, and, as shown below, discovery to-date appears to confirm, a significant part of this fraud scheme is based on quid pro quo arrangements between Defendants and the PI Attorneys who represent the patients who treat at P.A.I.N. in legal claims.  Plaintiffs contend Dr. Punjwani and P.A.I.N.'s fraudulent bills and supporting documentation are specifically designed to curry favor with the PI Attorneys because P.A.I.N.'s exorbitant charges for Dr. Punjwani's ESIs inflate the value of BI and UM Claims by increasing the medical expenses allegedly incurred as a result of the patients' accidents.  Compl. ¶ 66.  By artificially inflating the value of the BI and UM Claims in this manner, Defendants maintain: (1) their referral relationships with PI Attorneys and (2) their revenue stream, because they receive payment from the settlement proceeds from PI

---

[17] *See, e.g.*, Ex. 25, ███████████████████████████████████████; Ex. 26, ████
████████████████████████████████████████████████████

Attorneys.  *Id.* ¶¶ 7, 9–10.  Thus, discovery into these relationships is not only relevant to this case, but, if confirmed, will allow the jury to correctly understand the true motivations for the medically unnecessary treatments and documentation provided in this case, and appreciate how the fraud is effectuated through the relationship with PI Attorneys.

Evidence is mounting of the symbiotic relationship between Defendants and the PI Attorneys, ████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

██████████████████████.[18]  Because the Elite MRI Facilities served as the entry point to the scheme for the majority of patients, Plaintiffs should be able to assess the degree to which PI Attorneys (or others) were motivated to and did refer their clients to the Elite MRI Facilities, knowing that they would then move on from the Elite MRI Facilities to P.A.I.N., and to the extent that MRI over-reads are expected as part of the patient's medical file (and legal case).  *See Allstate Ins. Co. v. Nassiri*, 2011 WL 2516943, at *2 (D. Nev. June 23, 2011) (non-party attorney's "awareness of the defendants' acts, the change, if any, to the relationship once he learned of the defendants' practices, and his overall referral relationship with the defendants is relevant"); *State Farm Mut. Auto. Ins. Co. v. Warren Chiropractic & Rehab Clinic, P.C.*, 315 F.R.D. 220, 225 (E.D. Mich. 2016) (denying motions to quash by non-party PI law firm and non-party referral service and allowing discovery into "inference that the referral services were aware of an improper, reciprocal relationship between the law firms and the Defendants.").

_____

[18] *See* Ex. 26; Ex. 27, ██████████████████████████████████████████████████████████████████████████████████████████████; Ex. 28, ████████████████████████████████████████

16

### B.   The Subpoenas Are Not Unduly Burdensome and Are Proportional to the Needs of the Case.

The Elite MRI Facilities have not even attempted to establish the Subpoenas impose an undue burden on them.  As the party objecting to discovery on the basis of undue burden, the Elite MRI Facilities "bear[] the burden of showing why discovery should be denied." *Dotson*, 2017 WL 11535244, at *2.  The Elite MRI Facilities did not do this.  Instead, they object to *every* request as "overly broad and unduly burdensome because it will require Elite, non-parties to the action, to devote substantial time and resources to obtain the documents requested."  Ex. 6.  The Elite MRI Facilities further object to every request but one that "[a]s non-party to this dispute, Elite should not be forced to undertake the expense and burden of conducting such a search, particularly when the requesting party has not demonstrated a need for the information, let alone an inability to obtain the information from parties to the litigation."  *Id.*  But the Elite MRI Facilities make no effort to explain why this non-specific objection applies to each request or why any given request would require "substantial time and resources" on their part, and thus they have failed to satisfy their burden of demonstrating "that compliance with the subpoena would be unreasonable and oppressive." *Williams v. City of Dallas*, 178 F.R.D. 103, 109 (N.D. Tex. 1998) (citation omitted).  Nor do the Elite MRI Facilities offer any details as to how complying with the Subpoenas would impose an undue burden on them beyond vague and conclusory statements, and courts have rejected vague burden objections just like those asserted by the Elite MRI Facilities.  *See Fischer v. Forrest*, 2017 WL 773694, at *3 (S.D.N.Y. Feb. 28, 2017) (rejecting repeated objections that requests are "overly broad and unduly burdensome" because this "language tells the Court nothing.").

The heart of the Elite MRI Facilities' undue-burden objection is that "as a non-party" to this dispute, they have no obligation to devote time or resources to discovery.  This argument, if it

were valid, would negate the very existence of Rule 45.  A specific rule allowing parties to seek discovery from non-parties would be useless if every subpoena to a non-party could be quashed by virtue of its non-party status. Moreover, the Elite MRI Facilities' argument that compliance with the Subpoenas would impose an undue burden on them simply because they are non-parties and that Plaintiffs should first have to show they cannot obtain the discovery from Defendants themselves does not pass the straight-face test.  While the Elite MRI Facilities direct Plaintiffs to seek this discovery from the Defendants, those same Defendants (who in fact own the Elite MRI Facilities) are simultaneously refusing to produce any documents relating to the Elite MRI Facilities.  This coordinated strategy, if allowed by the Court, would ensure that Plaintiffs cannot obtain important discovery into the Elite MRI Facilities' central role in the scheme, including even the MRI films for the patients at issue in this case.   As detailed extensively above, the Elite MRI Facilities are not the disinterested nonparties they purport to be.  Rather, they are owned and controlled by defendants Dr. Punjwani and the Roopanis and they are fully integrated with P.A.I.N. — sharing owners, operations, employees, locations, and even the attorneys representing them in this case.

### C.    The Elite MRI Facilities Have Failed to Demonstrate that any Subpoenaed Document Should Be Shielded From Disclosure as Privileged or Confidential

#### 1.    The Elite MRI Facilities Have Failed to Meet Their Burden of Establishing Any of the Subpoenaed Documents are Privileged

The Elite MRI Facilities do not attempt to establish that any documents responsive to the Subpoenas are privileged and instead make invalid, non-specific objections. The Elite MRI Facilities next object to the Subpoenas "to the extent [they seek] information that is protected under the attorney-client privilege, the attorney work product doctrine or any other applicable privileges" as well as any "Protected Health Information," "information or materials that are proprietary in nature," or "confidential business information." *See, e.g.*, Ex. 6 at 6–7.  However, a party asserting

18

privilege must offer a "'particular and specific demonstration of fact as distinguished from stereotyped and conclusory statements.'" *Doe 1 v. Baylor Univ.*, 2020 WL 2220189, at *3 (W.D. Tex. May 7, 2020) (denying motion to quash as to attorney-client and work-product privilege claims where nonparty did not offer "any specific claim of privilege for any document in [the non-party's] possession"). The Elite MRI Facilities do not specify any document or type of document to which their non-specific privilege claims would apply, and thus their objections on privilege grounds fail. To the extent that the Elite MRI Facilities are attempting to claim any documents or communications exchanged between them and *patients'* attorneys are privileged, this objection also fails, as the Elite MRI Facilities are outside of any attorney-client relationship. *See Perez v. Boecken*, 2020 WL 2733954, at *3 (W.D. Tex. May 26, 2020) (concluding that communication from patient's attorney to patient's medical provider and copy of check signed by patient's attorney were not privileged because medical provider is "outside of the attorney-client relationship").

        2.    <ins>The Elite MRI Facilities Fail to Explain Why Any Subpoenaed Document Should be Withheld as "Confidential" When the Protective Order in this Case Protects Any Such Documents</ins>

The Elite MRI Facilities have not identified any specific documents responsive to the Subpoenas that would be "confidential" nor have they articulated any reason why such documents could not be produced pursuant to the Protective Order in this case, and thus their objections regarding so-called "confidential" documents should be rejected. If the Elite MRI Facilities truly believe any specifically requested document is privileged or "confidential," their recourse is not to refuse to produce any such documents but rather to (1) provide to Plaintiffs a log identifying responsive documents they believe are privileged, *see Doe 1*, 2019 WL 2462800, at *12 (non-party law firm required to log any responsive documents potentially subject to attorney-client privilege); and (2) produce any "confidential" documents subject to the Protective Order in this case, *see*

*Simmons v. Tex. Water Dev. Bd.*, 2010 WL 3702626, at *1 (W.D. Tex. Sept. 16, 2010) (denying motion to quash, noting that protective order was sufficient to protect disclosure of any "medical information" the nonparty believed was "confidential").

## VI.    CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request the Court grant the motion and order the Elite MRI Facilities — Clay Healthcare Services, LLC d/b/a Elite Health Services – West Houston, Elite Health Services – Sugar Land, and Med Center Healthcare Services, L.P. d/b/a Elite Health Services – Medical Center — to produce all documents responsive to the Subpoenas issued to them within 10 days of the Court's Order.

Dated: October 20, 2020                    Respectfully submitted,

By:   /s/ Jared T. Heck

Ross O. Silverman (admitted *pro hac vice*)
Katten Muchin Rosenman LLP
525 West Monroe Street
Chicago, IL  60661-3693
P:  (312) 902-5200
F:  (312) 577-8989
ross.silverman@katten.com

ATTORNEY-IN-CHARGE FOR
PLAINTIFFS

Of Counsel:

Jared T. Heck (admitted *pro hac vice*)
Katten Muchin Rosenman LLP
525 West Monroe Street
Chicago, IL  60661-3693
(312) 902-5200
jared.heck@katten.com

Micah Kessler
Nistico, Crouch & Kessler, P.C.
1900 West Loop South, Suite 800
Houston, TX 77027
(713) 781-2889
mkessler@nck-law.com

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on October 20, 2020 I electronically filed the foregoing motion with the Clerk of Court using the CM/ECF system, which will send notification to all counsel of record.

By:     /s/ Jared T. Heck
        Jared T. Heck (admitted *pro hac vice*)
        Katten Muchin Rosenman LLP
        525 West Monroe Street
        Chicago, IL  60661-3693
        P:  (312) 902-5200
        F:  (312) 577-8989
        jared.heck@katten.com