**UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**

| | |
|---|---|
| STATE FARM MUTUAL AUTOMOBILE ) | |
| INSURANCE COMPANY and STATE ) | |
| FARM COUNT MUTUAL INSURANCE ) | |
| COMPANY OF TEXAS, ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| v. ) | Case No. 4:19-CV-01491 |
| ) | Hon. Ewing Werlein, Jr. |
| NOORUDDIN S. PUNJWANI, M.D.; ) | |
| PAIN ALLEVIATION & ) | |
| INTERVENTIONAL NEEDS, LLC n/k/a ) | |
| PAIN ALLEVIATION & ) | |
| INTERVENTIONAL NEEDS, PLLC; ) | |
| BARKETALI M. ROOPANI; ) | |
| ANIL B. ROOPANI; and ) | |
| SOHAIL B. ROOPANI, ) | |
| ) | |
| Defendants. ) | |

**DEFENDANTS PAIN ALLEVIATION & INTERVENTIONAL NEEDS, PLLC,**
**BARKETALI M. ROOPANI, ANIL B. ROOPANI, SOHAIL B. ROOPANI,**
**AND NOORUDDIN S. PUNJWANI, M.D.'S**
**RESPONSE TO PLAINTIFFS' MOTION TO COMPEL DISCOVERY**

# TABLE OF CONTENTS

I.  INTRODUCTION ............................................................................................................. 1

II.  ARGUMENT .................................................................................................................. 2

    A.  The Motion to Compel is State Farm's most-recent attempt to publicly disparage Defendants and their business............................................................................... 2

    B.  The requests are patently overbroad and substantial compliance would saddle Defendants with significant burden and expense................................................... 5

    C.  State Farm has far exceeded the 25-interrogatory limit imposed by Federal Rule of Civil Procedure 33 without seeking leave of Court......................................... 18

III.  CONCLUSION ............................................................................................................. 20

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Mir v. L-3 Commc'ns Integrated Sys., L.P.*,
   319 F.R.D. 220 (N.D. Tex. 2016) .............................................................................................5

*Norton v. Assisted Living Concepts, Inc.*,
   786 F. Supp. 2d 1173 (E.D. Tex. 2011) ....................................................................................6

*Shell Glob. Sols. (US) Inc. v. RMS Eng'g, Inc.*,
   No. 4:09-CV-3778, 2011 WL 3418396 (S.D. Tex. Aug. 3, 2011) ...........................................5

*Sonnino v. Univ. of Kan. Hosp. Auth.*,
   221 F.R.D. 661 (D. Kan. 2004)................................................................................................6

*Superior Sales W., Inc. v. Gonzalez*,
   335 F.R.D. 98 (W.D. Tex. 2020) ...........................................................................................18

**Other Authorities**

Fed. R. Civ. P. 26(b)(1)...........................................................................................................5, 11

Fed. R. Civ. P. 26(c) ...................................................................................................................11

Fed. R. Civ. P. 33 .......................................................................................................................18

Fed. R. Civ. P. 33(a) ..................................................................................................................18

Fed. R. Civ. P. 33(a)(1)..............................................................................................................18

Fed. R. Civ. P. 34(a)(1)............................................................................................................5, 7

Fed. R. Civ. P. 34(b)(1)(A)..........................................................................................................6

i

Defendants PAIN Alleviation & Interventional Needs, PLLC ("*PAIN*"), Barketali M. Roopani, Anil B. Roopani, Sohail B. Roopani (collectively, the "*Roopani Defendants*"), and Nooruddin S. Punjwani, M.D. ("*Dr. Punjwani*") (collectively, "*Defendants*"), respond in opposition to Plaintiffs' Motion to Compel Discovery [Doc. 95] as follows:

## I.      INTRODUCTION

Plaintiffs State Farm Mutual Automobile Insurance Company and State Farm Country Mutual Insurance Company of Texas (collectively, "*State Farm*" or "*Plaintiffs*"), filed suit on April 23, 2019, alleging that Defendants conspired to defraud State Farm when they treated automobile accident victims. [Doc. 1]. Specifically, State Farm alleges a claim for money had and received against all Defendants and a RICO claim against Dr. Punjwani.

Throughout discovery, Defendants have made an effort to work with State Farm to provide State Farm with the discovery to which it is entitled under the Federal Rules of Civil Procedure. Yet, at every opportunity, State Farm has attempted to publically humiliate Defendants and their business. Due to State Farm's aggressive approach, Defendants had no choice but to move for a protective order. [Doc. 64].  State Farm subsequently filed the instant Motion to Compel, seeking to compel production of the same documents that Defendants addressed in their Motion for Protective Order. State Farm's Motion to Compel is the most recent example of State Farm's improper use of motions to argue its case and the tactics from which Defendants need protection.

Further, State Farm's requests are exceptionally broad and unduly burdensome. Nearly every request includes terms defined to be as broad as possible, including "related to," "Documents," "Communications," "You," and "Your." A number of courts have found that such extensive terms are facially overbroad and lack reasonable particularity.

75292203.3

Defendants have already been forced to bear major costs in objecting to and responding to State Farm's overreaching discovery, and an Order requiring broader response would require Defendants to incur even more expense. As Plaintiffs and this Court are aware, Defendants have already engaged in major discovery efforts to produce electronically stored information, including producing over 37,000 pages of documents, which include but are not necessarily limited to, patient medical records, financial records and documentation, fluoroscopic images of patient procedures, and more. To date, Defendants have made seven productions. On June 18, 2020, PAIN and the Roopani Defendants produced their first set of documents totaling 26,927 pages. Their second set was produced on July 27, 2020, which included 6,493 pages of documents. PAIN and the Roopani Defendants' made a third production on September 3, 2020, consisting of 225 pages of documents. On November 6, 2020, they produced 2,098 more pages of documents. Most recently, PAIN and the Roopani Defendants produced 224 additional pages of documents on November 13, 2020. Likewise, Dr. Punjwani made his first production of 496 documents on August 28, 2020 and second set of 1,159 documents on November 3, 2020. In sum, documents produced by Defendants in this case total over 37,600 pages.

Defendants have agreed to provide further documents on a rolling basis and have conferred in good faith to scale back the discovery sought by State Farm. However, to the extent State Farm insists on pushing for further production of documents that cannot be reasonably tied to the claims asserted against Defendants, Defendants request the Court grant the currently pending Motion for Protective Order [Doc. 64] and Deny this Motion to Compel.

## II.     ARGUMENT

**A.     The Motion to Compel is State Farm's most-recent attempt to publicly disparage Defendants and their business.**

2

Despite Defendants' efforts to work with State Farm to provide the requested discovery, State Farm continues to publicly disparage the Defendants and their practice at every opportunity throughout this litigation. As a result of State Farm's aggressive approach, Defendants had no choice but to move for a Protective Order that would expressly forbid State Farm from engaging in such tactics. [Doc. 64].

Once again, State Farm has filed this motion, laying out unsubstantiated claims and theories of its case as "facts" that were completely irrelevant to the Motion to Compel. For example, State Farm's Motion Compel contains unsupported allegations that are patently contradicted by their own documents.

First, State Farm makes the unsupported allegation that "the few films Plaintiffs obtained through patients' accident claims reflect Dr. Punjwani fabricated or exaggerated findings to support his predetermined ESI recommendations." [Doc. 95 at 4]. However, second opinions given by doctors obtained by State Farm, *interpreting those exact images*, conclude that the treatments recommended by Dr. Punjwani were reasonable and necessary. For example, one report opined that "

" Dr. Stephen I. Esses, M.C. Report, Exhibit A at ¶ 6, *filed under Seal*. The same report provides that "

*Id.* at ¶ 9. Another report similarly found that

" and that "

" Dr. Ahmed I. Sewielam, M.D. Report, Exhibit B at 6-7, *filed under Seal*. At least six additional reports in State Farm's possession also support Dr. Punjwani's recommendations:

3

- Dr. Jose Spencer, M.D. Report Claim #            , Exhibit C at 3, *filed under Seal* (
                                                    ");

- Dr. Jose Spencer, M.D. Report Claim #            , Exhibit D at 4, *filed under Seal* ("
                                                    ");

- Dr. Jose Spencer, M.D. Report Claim #            , Exhibit E at 5, *filed under Seal* (finding that the MRI findings were consisted with the MRI films that the treatments were medically necessary);

- Dr. Jose Spencer, M.D. Report Claim #            , Exhibit F at 3, *filed under Seal* (finding that the MRI findings were consisted with the MRI films);

- Dr. Jose Spencer, M.D. Report Claim #            , Exhibit G at 3-4, *filed under Seal* (finding that the MRI findings were consisted with the MRI films); and

- Dr. Jose Spencer, M.D. Report Claim #            , Exhibit H at 3-4, *filed under Seal* (finding that the MRI findings were consisted with the MRI films).

In yet another attempt to publicly humiliate Defendants and call into question the legitimacy of their business, State Farm makes the unsupported claim that "Dr. Punjwani *purportedly* performed fluoroscopic guidance on patients . . . ." [Doc. 95 at 13] (emphasis added). However, Plaintiffs were specifically invited by Defendants to inspect the fluoroscopic images (in hopes of decreasing the cost and burden of producing the documents) on August 4, 2020. Email from A. Simon to M. Ryan, Exhibit I. However, Plaintiffs never did take the opportunity to inspect the images made available to them, and in an effort to move this case forward to resolution, and comply with the requests, Defendants have incurred the burdensome task of accessing the individual file images stored on servers, identifying which images pertain to each patient at issue in this suit, and have started producing those images electronically to Plaintiffs. Defendants have incurred the expense of producing those fluoroscopic images, despite the offer to come on site and review, and continue to produce those images on a rolling basis to

debunk Plaintiffs' claims. In other words, State Farm makes these unsubstantiated claims *despite having access to images showing that such imaging was performed*.

Moreover, State Farm has continuously taken an aggressive and overreaching approach to discovery in this case, based simply on the notion that it is entitled to broad discovery because it has asserted a RICO claim against one named defendant. This approach has caused demonstrable hardship and prejudice to Defendants, as well as non-parties, in that it has forced them to bear enormous costs in objecting to and responding to overreaching discovery. [Docs. 64; 99]. Plaintiff's Motion to Compel is the latest example of State Farm's tactics from which Defendants need protection.

**B.     The requests are patently overbroad and substantial compliance would saddle Defendants with significant burden and expense.**

A bedrock principle of discovery is that it must be relevant to a claim or defense of any party and proportional to the needs of the case. Fed. R. Civ. P. 26(b)(1). To determine whether discovery requests are proportional to the needs of a case, a court must consider, among other things, "the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit."   *Id.*; *Mir v. L-3 Commc'ns Integrated Sys., L.P.*, 319 F.R.D. 220, 225 (N.D. Tex. 2016) ("[A] court can—and must—limit proposed discovery that it determines is not proportional to the needs of the case . . . ."). Further, a party is only required to produce documents that are within its possession, custody, or control. Fed. R. Civ. P. 34(a)(1). The party seeking production of documents bears the burden of establishing the opposing party's control over them. *Shell Glob. Sols. (US) Inc. v. RMS Eng'g, Inc.*, No. 4:09-CV-3778, 2011 WL 3418396, at *2 (S.D. Tex. Aug. 3, 2011). Requests for production must also describe with

5

reasonable particularity each item or category of items to be produced. Fed. R. Civ. P. 34(b)(1)(A).

Here, nearly all of Plaintiffs' requests seek "[a]ll Documents and Communications," and employ the terms "You," "Your," "related to," or "relating to." [Docs. 64-1 at 5, 9-10; 64-2 at 5-9; 64-3 at 5-9; 64-4 at 5-9; 64-5 at 6, 8].  As noted in the Elite Nonparties' Response to Plaintiffs' Motion to Compel, [Doc. 99], Plaintiffs' definitions of these terms are extremely broad and can hardly be considered to describe the requested materials with "reasonable particularity." Fed. R. Civ. P. 34(b)(1)(A); *Norton v. Assisted Living Concepts, Inc.*, 786 F. Supp. 2d 1173, 1180 (E.D. Tex. 2011) (finding that interrogatory was overbroad where defined term "you" included all of employer's employees because employer could not reasonably be expected to know what each of its employees had done); *Sonnino v. Univ. of Kan. Hosp. Auth.*, 221 F.R.D. 661, 667-68 (D. Kan. 2004) (when an interrogatory uses an omnibus term such as "relating to" or "concerning," with respect to a general category or group of documents, the request is overbroad and/or unduly burdensome on its face).

   1. *Request No. 2 to the Roopani Defendants is overly broad and unduly burdensome because it seeks production of extensive documentation that is not relevant to the claims asserted against the Roopani Defendants, and the Roopani Defendants have already produced documents responsive to the request.*

Request 2 seeks: "All Documents and Communications reflecting Your contractual, financial, referral, ownership, and/or other relationship with . . . [*27 listed entities*] . . . including but not limited to any documents reflecting (i) Your role(s), title(s), and responsibilities with respect to that entity, (ii) the purpose for which that entity was formed and the services (if any) it provides, (iii) the terms of any contracts or other agreements You entered with that entity, (iv) the terms of any financial arrangements You entered with that entity, and (v) the amounts of any

6

payments, distributions, or other compensation You paid to or received from that entity." [Docs. 64-2 at 5-6; 64-3 at 5-6; 64-4 at 5-6] (emphasis added).

This request seeks documents and communications with **27 separate entities**, most of which are non-parties to this case. Given the expansive definitions of "Documents" and "Communications," the failure to limit the request to documents in the Roopani Defendants' possession, custody, or control (Fed. R. Civ. P. 34(a)(1)), and the use of "You" and "Your," this request seeks every scrap of paper that has anything to do with the Roopani Defendants' dealings with these 27 entities. This request is undeniably overbroad and unduly burdensome, especially in light of the fact that Plaintiffs have failed to show how these documents may be used to adjudicate a claim for money had and received against the Roopani Defendants.

Significantly, on June 29, 2020, counsel for the Roopani and PAIN Defendants sent Plaintiffs' counsel a letter, agreeing to produce responsive documents related solely to PAIN, along with any responsive documents that contain overlapping information for both PAIN and the Elite Entities. *See* June 29, 2020 Letter to Plaintiffs' Counsel, Exhibit J. To date, Defendants have produced over 37,000 pages of documents to Plaintiffs, including documents responsive to Request 2.

> 2. *Request No. 3 to the Roopani Defendants is overbroad and unduly burdensome because it would require production of extensive documentation that is not relevant to the claims asserted against the Roopani Defendants, and the Roopani Defendants have already produced documents responsive to the request.*

Request 3 seeks: "All Documents and Communications reflecting or relating to Your ownership, membership, equity, or any other financial interest in *any entity*, including but not limited to P.A.I.N. and/or the Elite Entities." [Docs. 64-2 at 6; 64-3 at 6; 64-4 at 6] (emphasis added).

7

This request employs the broadly-defined terms "Documents," "Communications," and "Your." It also uses "relating to" with respect to a general category of documents, *i.e.* "ownership, membership, equity, or any other financial interest." Attempting to locate, review, and produce every single "Document" or "Communication" would be a substantial task. Not only would it require detailed searches of both electronic and paper files, it would require interviewing each and every past and present employee of the Roopani Defendants, as well as anyone that may ever have "acted on behalf of" the Roopani Defendants. [*See* Docs. 64-2 at 3; 64-3 at 3; 64-4 at 3 (defining "You" and "Your," to include all "employee[s], agent[s], entit[ies], or other person[s] acting on behalf of" any of the Defendants)].  If this is not overbroad and unduly burdensome on its face, then it is difficult to imagine what request might be.

In the Letter to Plaintiffs' counsel, the Roopani Defendants agreed to produce responsive documents related solely to PAIN, along with any responsive documents that contain overlapping information for both PAIN and the Elite Entities. Ex. J at 2. Again, Plaintiffs have failed to show how these documents may be used to adjudicate a claim for money had and received against the Roopani Defendants. To date, Defendants have produced over 37,000 pages of documents to State Farm, including documents responsive to Request 3.

3.    *Request No. 4 to the Roopani Defendants and Request No. 11 to Dr. Punjwani are overbroad and unduly burdensome because they would require extensive searches and interviews to produce responsive documents, and Defendants have already produced documents responsive to the requests.*

Request 4 seeks: "All Documents reflecting or relating to investments, payments, and/or any financial or equity distributions You made to or received from P.A.I.N., the Elite Entities, and/or any other Defendant from 2015 through the present, including but not limited to any checks, general ledgers, receipts, or Form 1099s reflecting such payments or distributions. If Your general ledgers or any other accounting documents are kept in electronic form such as

8

QuickBooks, produce those ledgers and/or documents in electronic form." [Docs. 64-2 at 7; 64-3 at 7; 64-4 at 7]. Request 11 to Dr. Punjwani seeks the same information, except it is directed at Dr. Punjwani. [Doc. 64-5 at 8].[1]

Because the term "Documents" includes "communications" within the definition propounded by State Farm, this request seeks not just documents, but documentation of all discussions and conversations ever had regarding investments, payments and/or any financial or equity distributions between the Defendants and the Elite Entities since 2015. As written, substantial compliance would require, in addition to detailed searches of all electronic and paper records, interviews with all agents and employees of the Defendants and the Elite Entities—past and present—to determine whether any such investments, payments, and/or distributions had ever been discussed.

Counsel for the Roopani and PAIN Defendants informed Plaintiffs' counsel that the documents previously secured by State Farm through the subpoena requesting bank records contained much of the information sought by this request. Ex. J, at 2. Further, the Roopani Defendants have produced non-privileged information within its possession, custody, or control related to PAIN, including their tax returns for fiscal years 2015-2019 on November 6, 2020. In fact, Plaintiffs' Motion to Compel references information from Defendants' financials already in Plaintiffs' possession. [Doc. 95 at 8-9 ("P.A.I.N.'s bank records reflect only minimal direct payment to the Roopanis.")]. Notwithstanding the fact that the Roopani Defendants' have already produced substantial documents responsive to this request, State Farm filed the instant motion merely to advance its unsupported theory that the Roopani Defendants profited from an alleged "fraudulent scheme."

---

[1] Because State Farm served many of the same requests on the Roopani Defendants and Dr. Punjwani, Defendants will address the requests that overlap together.

75292203.3

The same is true for Dr. Punjwani. State Farm already has or will receive Dr. Punjwani's bank records, his tax information through 2019, and documents that show the work Dr. Punjwani performed for PAIN and the amount he charged for that work from 2015 to the present.

4. *Request No. 5 to the Roopani Defendants and Request No. 12 to Dr. Punjwani are overbroad and unduly burdensome because they seek production of extensive and irrelevant documentation regarding PAIN and the Elite Entities, and Defendants have already produced documents responsive to the requests.*

Request 5 seeks: "All Documents and Communications relating to or reflecting the creation, operation, and/or management of P.A.I.N. and/or the Elite Entities." [Docs. 64-2 at 7; 64-3 at 7; 64-4 at 7]. Request 12 to Dr. Punjwani seeks the same information, except it is directed at Dr. Punjwani. [Doc. 64-5 at 8].

As written, this request seeks documentation of every discussion or conversation Defendants ever had—with *anyone*—that touches even remotely on the creation, operation, and/or management of PAIN and/or the Elite Entities. Again, Plaintiffs have failed to show how these documents, which, as written, would include electricity bills and receptionist pay stubs, are at all relevant to State Farm's claim for claim for money had and received against the Roopani Defendants.

In an effort to confer in good faith, the Roopani Defendants agreed to produce responsive documents within their possession, custody, and control related to PAIN.  Ex. J at 2. To date, Defendants have produced over 37,000 pages of documents to State Farm, including documents responsive to Request 5. Further compliance with this request would require the Court to adopt State Farm's overbroad definition of documents and communications, as well as essentially granting State Farm unfettered access into other non-party entities.

With regard to Dr. Punjwani, as an individual contractor this request clearly seeks documents that are outside of his custody and control, are duplicative of documents already

75292203.3

produced by the other Defendants, and that are more easily and cheaply obtained from other Defendants like PAIN itself. *See* Fed. R. Civ. P. 26(b)(1) (scope of discovery includes consideration of the parties' relative access to relevant information); Fed. R. Civ. P. 26(c) (court may issue protective order because discovery sought is unreasonably cumulative or duplicative or can be obtained from some other source that is more convenient, less burdensome, or less expensive). However, Dr. Punjwani has agreed to produce documents in his possession like, for example, any agreements he has with PAIN.

5.    *Request No. 6 to the Roopani Defendants and Request No. 13 to Dr. Punjwani are overbroad and unduly burdensome because they would require extensive searches and interviews to produce responsive documents, and Defendants have already produced documents responsive to the requests.*

Request 6 seeks: "All Documents reflecting or relating to Your financial condition from 2015 to the present, including but not limited to, any general ledgers, balance sheets, income statements, and/or account statements. If Your accounting documents are kept in electronic form such as QuickBooks, produce those ledgers and/or documents in electronic form." [Docs. 64-2 at 7; 64-3 at 7; 64-4 at 7]. Request 13 to Dr. Punjwani seeks the same information, except it is directed at Dr. Punjwani. [Doc. 64-5 at 8].

Because the term "Documents" includes "communications" within the definition propounded by State Farm, this request seeks not just documents, but documentation of all discussions and conversations ever had regarding the financial condition of the Roopani Defendants and any of their agents or employees. As written, substantial compliance would require, in addition to detailed searches of all electronic and paper records, interviews with all agents and employees of the Roopani Defendants to determine whether their financial condition had ever been the topic of conversation or otherwise discussed.

11

The Roopani Defendants have produced non-privileged information within their possession, custody, or control related to PAIN, including their tax returns for fiscal years 2015-2019 on November 6, 2020.

Similarly, Dr. Punjwani has produced his personal tax returns for 2014-2018 and he has agreed to produce his tax returns for 2019. State Farm also already has a complete picture of Dr. Punjwani's finances from the extensive bank records it has already received based on Dr. Punjwani's disclosure of his bank account information.

> 6. *Request No. 9 to the Roopani Defendants is overbroad and unduly burdensome because it would require extensive searches and interviews to produce responsive documents, and the Roopani Defendants have already produced documents responsive to the request.*

Request 9 seeks: "All Documents reflecting or relating to any services performed for P.A.I.N. and/or the Elite Entities by any management company, transportation company, patient referral or solicitation service, medical or health care provider, billing/collection company, consulting company, law firm, marketing company, and/or accounting/bookkeeping/tax company, including their employees and/or agents." [Docs. 64-2 at 7; 64-3 at 7; 64-4 at 7].

This request again uses the broadly defined terms "Documents" and "relating to" with reference to a general category of documents, i.e., "any services performed for P.A.I.N. and/or the Elite Entities." And in light of the expansive definitions of "P.A.I.N." and "Elite Entities," substantial compliance would require painstaking searches of both electronic and paper files and interviews of every past and present employee of PAIN and the Elite Entities as well as anyone who may ever have acted on behalf of PAIN and/or the Elite Entities. Further, as noted in the Letter to Plaintiffs' counsel, the Roopani Defendants agreed to produce responsive documents related solely to PAIN that are within their custody or control. Ex. J at 2.  To date, Defendants

have produced over 37,000 pages of documents to State Farm, including documents responsive to Request 9.

> 7.      *Request No. 12 to the Roopani Defendants is overbroad and unduly burdensome because it would require extensive searches and interviews to produce documents related to nonparties, and the Roopani Defendants have already produced documents responsive to the request.*

Request 12 seeks: "All Documents and Communications reflecting or relating to any transfer of assets, liabilities, or leases from You, P.A.I.N., any other Defendant and/or the Elite Entities to any other entity or person, including but not limited to any accounts receivable or payable." [Docs. 64-2 at 8; 64-3 at 8; 64-4 at 8].

As written, this request seeks documentation of every discussion or conversation the Roopani Defendants ever had—with *anyone*—that touches even remotely on accounts receivable or the transfer of assets, liabilities, or leases from the Defendants or Elite Entities. As written, substantial compliance would require, in addition to detailed searches of all electronic and paper records, interviews with all agents and employees of the Defendants and the Elite Entities—past and present—to determine whether any such transfers or accounts receivable had ever been discussed. This request is overly broad and unduly burdensome, especially in light of the fact that it requests information relating to the Elite Entities, which a not parties to this lawsuit.

Moreover, counsel for the Roopani and PAIN Defendants informed Plaintiffs' counsel that the documents previously secured by State Farm through the subpoena requesting bank records contained much of the information sought by this request. Ex. J, at 2. Again, State Farm takes advantage of its Motion to Compel to demean Defendants, despite knowledge that it is already in possession of the documents that form, at least in part, the basis for its Motion to Compel.

13

8. *Request No. 20 to the Roopani Defendants is overbroad and unduly burdensome because it seeks documents that do not exist, or are otherwise not within the Roopani Defendants' possession, custody, or control.*

Request 20 seeks: "All deposition transcripts, sworn statements, recorded statements, or transcripts of examinations under oath reflecting testimony by You or anyone performing healthcare services at on [sic] behalf of P.A.I.N. and/or the Elite Entities." [Docs. 64-2 at 9; 64-3 at 9; 64-4 at 9].

The June 29, 2020 letter to Plaintiffs' counsel made clear that the Roopani Defendants have not given any testimony regarding the performance of healthcare services on behalf of PAIN and, as such, there are no such documents in the Roopani Defendants' custody or control that are responsive to this request. Ex. J at 3. In their Motion to Compel, Plaintiffs therefore seek documents that they are aware do not exist. This request is overbroad and unduly burdensome considering it seeks documents that either do not exist, or are not otherwise in the Roopani Defendants' custody or control.

9. *Request No. 2 to PAIN is overbroad and unduly burdensome because it seeks every document related to services performed on 868 different patients and PAIN has already expended significant resources to produce documents responsive to the request.*

Request 2 seeks: "All Documents and Communications reflecting or relating to all payments received by You or paid by You to either Plaintiff, any other Defendant, the Elite Entities, any law firm or personal injury attorney, or any other source relating to the healthcare services You, Nooruddin S. Punjwani, M.D., Rehan Memon, M.D., Sara Goel, D.O., and/or the Elite Entities performed for the patients whose claims are at issue in the Complaint." [Doc. 64-1 at 5].

This request uses the expansively-defined terms "Documents," "Communications," and "You." It also uses "relating to" with respect to a general category of documents, i.e. "payments

received." As such, this request seeks every scrap of paper ever exchanged between PAIN (as well as their employees and agents) and (1) State Farm, (2) any other Defendant, (3) the Elite Entities, (4) any law firm or personal injury attorney, or (5) any other source relating to **868 patients**. [Doc. 1 at Ex. 1].

To substantially comply with this request, PAIN conducted a laborious and expensive search of all electronic and paper communications and files in an attempt to extract the responsive documents. PAIN produced non-privileged documents within its possession, custody, or control and responsive to this request in its production of patient medical records on June 18, 2020 and July 27, 2020. Given the significant resources already expended to comply with this request, further production would require PAIN to incur additional expense and is further evidence of why this request is unduly burdensome.

> *10.     Request No. 21 to PAIN is overbroad and unduly burdensome because it would require extensive searches and interviews to produce documents related to nonparties, and PAIN has already produced documents responsive to the request.*

Request 21 seeks: "All Documents and Communications reflecting or relating to any transfer of assets, liabilities, or leases from You, any other Defendant, and/or the Elite Entities to any other entity or person, including but not limited to any accounts receivable or payable." [Doc. 64-1 at 9].

This request is the same as Request 12 to the Roopani Defendants, except it is directed at PAIN. This change does not render it any less broad or burdensome. Again, at the time Plaintiffs filed their Motion to Compel, they were aware that PAIN had already produced non-privileged information responsive to this request within its possession, custody, and control, as part of the PAIN banking records. Ex. J at 4.

> *11.     Request No. 29 to PAIN is overbroad and unduly burdensome because it seeks documents that are not relevant to the claims asserted against PAIN and are not within PAIN's possession, custody, or control.*

15

Request 29 seeks: "All deposition transcripts, sworn statements, recorded statements, or transcripts of examinations under oath reflecting testimony by You or anyone performing healthcare services on Your behalf." [Doc. 64-1 at 10].

This request is overbroad and unduly burdensome considering it seeks discovery of documents that are not relevant to a claim for money had and received asserted against PAIN and are not otherwise in PAIN's possession, custody, or control. Furthermore, the PAIN and Roopani defendants have made an effort to obtain this information, and such transcripts are not within Defendants' custody or control.

12. *Request No. 5 to Dr. Punjwani is overbroad and unduly burdensome because it would require extensive searches and interviews of every individual who ever worked for or on behalf of Dr. Punjwani.*

Request 5 seeks: "All Documents and Communications reflecting or relating to Your roles and responsibilities with respect to any position(s) You hold or have held at P.A.I.N. and/or the Elite Entities, including but not limited to any contracts or other agreements You entered with those entities, any financial arrangements You made with those entities, and any payments You made to or received from those entities." [Doc. 64-5 at 6].

This request again uses the expansive defined terms "Documents" and "Communications," as well as "relating to" with reference to a general category of documents, i.e., any positions Dr. Punjwani has ever held at PAIN and/or the Elite Entities. Moreover, the request for all documents that "reflect" Dr. Punjwani's responsibilities could include almost every email he has sent or document he has created while working for PAIN. And because the request seeks such Documents and Communications with respect to any positions "You" hold or have held, substantial compliance would require painstaking searches of both electronic and paper files and interviews of every past and present employee of Dr. Punjwani, as well as anyone that may ever have "acted on behalf" of Dr. Punjwani.

16

Assuming the narrower, second half of the request reflects the information in which State Farm is actually interested, Dr. Punjwani already produced responsive documents and will supplement his production with additional documents. As explained above, State Farm already has extensive information related to Dr. Punjwani's finances, and he will produce records that show the work he performed for PAIN and the amounts he charged for that work and any agreements he has with PAIN.

13.   *Request No. 6 to Dr. Punjwani is overbroad and unduly burdensome because it seeks production of every document and communication regarding services performed over the last six years, and Defendants have already produced documents responsive to this request.*

Request 6 seeks: "All Documents and Communications reflecting or relating to any services You have performed for or on behalf of P.A.I.N. and/or the Elite Entities." [Doc. 64-5 at 6].

As written, this request seeks documentation of every discussion or conversation Dr. Punjwani has ever had—with *anyone*—that touches even remotely on any services Dr. Punjwani has performed for or on behalf of PAIN and/or the Elite Entities. Because the Requests for Production ask for documents going back to January 1, 2015, attempting to locate, review, and produce every single "Document" or "Communication" responsive to this request would be an almost-impossible task. Not only would it require detailed searches of both electronic and paper files, it would require interviewing each and every past and present employee of PAIN and the Elite Entities, as well as anyone that may ever have "acted on behalf of" PAIN and/or the Elite Entities. This request is patently overbroad and unduly burdensome.

However, Dr. Punjwani has already produced over 1,600 pages of documents from his personal and work email accounts, including documents responsive to this request that are related to the services he performed for the patients at issue in this case. He has also located and

17

will produce records that show the services he performed for PAIN *and* the amounts he charged for that work.

Significantly, as noted above, on August 4 2020, Defendants offered to make fluoroscopic images available to Plaintiffs for inspection. *See* Ex. I. Plaintiffs have been given the opportunity to access the fluoroscopic images for over two months, but have not attempted to review those images. In an effort to Defendants incurred the substantial cost of producing fluoroscopic images in an effort to debunk State Farm's claims and move the case toward resolution. Now, Defendants have been forced to incur the cost of responding to this Motion on an issue that was made moot before State Farm even filed this Motion to Compel. Because this is a moot issue and Defendants have already made the fluoroscopic images available for inspection, the Court should order that State Farm be required to reimburse Defendants for responding to this issue, as it was made moot before State Farm filed this Motion.

**C.     State Farm has far exceeded the 25-interrogatory limit imposed by Federal Rule of Civil Procedure 33 without seeking leave of Court.**

As fully briefed in Defendants' Motion for Protective Order [Doc. 64], State Farm's attempt to issue far more than 25 interrogatories to each of the Defendants completely disregards the very clear limitations on interrogatories under Federal Rule of Civil Procedure 33. Fed. R. Civ. P. 33(a)(1) ("Unless otherwise stipulated or ordered by the court, a party may serve on any other party no more than 25 interrogatories, including all discrete subparts."); *Superior Sales W., Inc. v. Gonzalez*, 335 F.R.D. 98, 103 (W.D. Tex. 2020).

When the 25-interrogatory limit was adopted as part of Rule 33 in 1993, the Advisory Committee Note further clarified that a party "must secure leave of court (or a stipulation from the opposing party) to serve a larger number [of interrogatories]. Parties cannot evade this presumptive limitation through the device of joining as 'subparts' questions that seek

75292203.3

information about discrete separate subjects." Fed. R. Civ. P. 33(a) advisory committee's note to 1993 amendment.

The Federal Rules could not be more clear: State Farm was required to seek leave of court or approach Defendants in advance of issuing more than 25 interrogatories. However, State Farm did not request in advance, nor has the Court ordered, additional interrogatories. Nevertheless, State Farm persists in its unwarranted and inappropriate discovery demands.

Since early on in the discovery stages, Defendants have attempted to work with State Farm in good faith to provide documents and responses relevant to its claims against Defendants. For example, the Roopani Defendants have provided information regarding their employment history, compensation, and relationships with various entities. Sohail Roopani Answers to Plaintiffs' First Set of Interrogatories, Exhibit K; Anil Roopani Answers to Plaintiffs' First Set of Interrogatories, Exhibit L; Barket Ali Roopani Answers to Plaintiffs' First Set of Interrogatories, Exhibit M; Sohail Roopani Supplemental Answers to Plaintiffs' First Set of Interrogatories, Exhibit N; Anil Roopani Supplemental Answers to Plaintiffs' First Set of Interrogatories, Exhibit O; Barket Ali Roopani Supplemental Answers to Plaintiffs' First Set of Interrogatories, Exhibit P. PAIN has likewise identified current and former employees that would have information potentially relevant to dispute, as well as details regarding its relationships with Dr. Punjwani and several other physicians. PAIN Answers to Plaintiffs' First Set of Interrogatories, Exhibit Q. Dr. Punjwani has collected individual documents and searched his personal and work email accounts for responsive information, provided information regarding his employment history, his relationships with the 27 entities listed in Interrogatory 2, and his banking and tax information. Dr. Punjwani Answers to Plaintiffs' First Set of Interrogatories, Exhibit R.

19

Defendants have produced a significant amount of information in an effort to show State Farm that the RICO and money had and received claims against Defendants are unwarranted. State Farm is not entitled to discovery beyond that allowed by the Federal Rules simply because it is disappointed that the information provided by Defendants does not support its meritless claims.

## III.    CONCLUSION

As demonstrated above, the discovery requests directed at Defendants are overly broad and unduly burdensome. Consequently, Defendants ask the Court to deny Plaintiffs' Motion to Compel and award Defendants reasonable expenses and attorneys' fees incurred in preparing this response.

Respectfully submitted,

POLSINELLI PC

By:*/s/ Ebad Khan*
Mark S. Armstrong, Esq.
Texas Bar No. 01321900
Fed. I.D. No. 219390
1000 Louisiana Street, Suite 6400
Houston, Texas 77002
713-374-1600
Fax: 713-374-1601
marmstrong@polsinelli.com
**Attorney in Charge**

Lauren E. Tucker McCubbin, Esq.
900 W. 48th Place, Suite 900
Kansas City, Missouri 64112
816-753-1000
Fax: 816-753-1536
ltucker@polsinelli.com

Ebad Khan, Esq.
Texas Bar No. 24092625
Fed. I.D. No. 2810999

20

1000 Louisiana Street, Suite 6400
Houston, Texas 77002
713-374-1600
Fax: 713-374-1601
ekhan@polsinelli.com

ATTORNEYS FOR DEFENDANTS PAIN
ALLEVIATION & INTERVENTIONAL
NEEDS, PLLC, BARKETALI M. ROOPANI,
ANIL B. ROOPANI, AND SOHAIL B.
ROOPANI

and

AHMAD ZAVITSANOS ANAIPAKOS
ALAVI & MENSING PC

Todd W. Mensing, Esq.
Sammy Ford, IV, Esq.
Jordan L. Warshauer, Esq.
1221 McKinney Street, Suite 2500
Houston, Texas 77010
713-655-1101
Fax:  713-655-0062
tmensing@azalaw.com
sford@azalaw.com
jwarshauer@azalaw.com

ATTORNEYS FOR DEFENDANT
NOORUDDIN S. PUNJWANI, M.D.

21

## CERTIFICATE OF SERVICE

I hereby certify that on the 17th day of November, 2020, the above and foregoing was served to all counsel of record.

*/s/ Ebad Khan*
Ebad Khan

Jared T. Heck, Esq.
Ross O. Silverman, Esq.
Eric T. Gortner, Esq.
Katten Muchin Rosenman LLP
525 W. Monroe Street, Suite 1900
Chicago, IL 60661-3693
312-902-5200
Jared.heck@kattenlaw.com
Ross.silverman@kattenlaw.com
Eric.gortner@kattenlaw.com

Emily L. Travis, Esq.
Katten Muchin Rosenman LLP
1301 McKinney Street, Suite 3000
Houston, TX 77010
713-270-3446
Fax: 713-270-3401
Emily.travis@kattenlaw.com
ATTORNEYS FOR PLAINTIFFS

Todd W. Mensing, Esq.
Sammy Ford, IV, Esq.
Ahmad Zavitsanos Anaipakos
Alavi & Mensing PC
1221 McKinney Street, Suite 2500
Houston TX 77010
713-655-1101
Fax: 713-655-0062
tmensing@azalaw.com
sford@azalaw.com
ATTORNEYS FOR DEFENDANT
NOORUDDIN S. PUNJWANI

Mark S. Armstrong, Esq.
Ebah Khan, Esq.
Polsinelli PC
1000 Louisiana Street, Suite 6400
Houston, TX 77002
713-374-1600
Fax: 713-374-1601
marmstrong@polsinelli.com
ekhan@polsinelli.com

Lauren T. Tucker McCubbin, Esq.
Polsinelli PC
900 W. 48th Place, Suite 900
Kansas City, MO 64112
816-753-1000
Fax: 816-753-1536
ltucker@polsinelli.com

ATTORNEYS FOR DEFENDANTS
PAIN ALLEVIATION &
INTERVENTIONAL
NEEDS, LLC N/K/A PAIN
ALLEVIATION & INTERVENTIONAL
NEEDS, PLLC ("P.A.I.N."), BARKETALI
M. ROOPANI, ANIL B. ROOPANI AND
SOHAIL B. ROOPANI

1